UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

# 05 10735 RGS

STEPHEN H. OLESKEY,                                       )
                                                          )
ON BEHALF OF GUANTANAMO INTERNEES                         )  MAGISTRATE JUDGE LTS
LAKHDAR BOUMEDIENE,                                       )
MOHAMED NECHLA, MUSTAFA AIT IDIR,                         )
SABER LAHMAR, HADJ BOUDELLA,                              )  Civil Action No. _____
AND BELKACEM BENSAYAH,                                    )
                                                          )
              Plaintiff,                                  )  **COMPLAINT**
                                                          )
                                                          )  RECEIPT # _____ 3510
       v.                                                 )  AMOUNT $____
                                                          )  SUMMONS ISSUED ___
UNITED STATES DEPARTMENT OF                               )  LOCAL RULE 4.1 ___
DEFENSE AND UNITED STATES                                 )  WAIVER FORM ___
DEPARTMENT OF JUSTICE,                                    )  MCF ISSUED ___
                                                          )  BY DPTY. CLK. _____
              Defendants.                                 )  DATE 4-13-05
                                                          )

## PRELIMINARY STATEMENT

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*,

seeking an order requiring the Defendants, Department of Defense ("DOD"), Department of

Justice ("DOJ"), and their components, to immediately produce agency records requested by the

Plaintiff.

2.  On September 28, 2004, Plaintiff submitted his initial FOIA request ("the Request") to

the Defendants. The Request was submitted on behalf of six men interned at the United States

Naval Base, Guantanamo Bay, Cuba ("Guantanamo"): Lakhdar Boumediene, Mohamed Nechla

(also known as Mohammed Nechle), Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and

Belkacem Bensayah (also known as Bensayah Belkacem) (collectively, "Requesters"). See

Attachment A.

3. The Request sought records pertaining to the ongoing internment of Requesters, how Requesters came into the custody of the United States, and their treatment since U.S. forces seized them – including records regarding health, interrogations, and physical coercion, torture or punishment of any or all Requesters.

4. Numerous news stories have documented religious persecution, torture, and abuses of internees held at Guantanamo by agents of the United States Government ("Government") and instances of extraordinary rendition of detainees to countries known to use torture, such as, Egypt and Syria. Documented torture at Guantanamo has included physical coercion, sensory manipulation, sleep manipulation, short-shackling, exposure to extreme temperatures, and denial of medical treatment. Some of these practices were known to Plaintiff in September. As a result, Plaintiff asked that the Request receive expedited processing. More recently, reports of Government investigations into alleged torture and abuses and Plaintiff's interviews of Requesters in Guantanamo confirm that one or more of Requesters has suffered such forms of torture at Guantanamo. This more recent information also confirms the importance of the initial Request and the need for an expedited response to it.

5. Defendants have failed to release even a single record to the Plaintiff. Although the DOD granted Plaintiff's request for expedited processing in October 2004, the DOD has not released any records to Plaintiff and has failed to expeditiously process the Request. The DOJ has neither granted nor denied the request for expedited processing and also has failed to produce responsive records.

6. To enforce the Plaintiff's right to gather information on behalf of Requesters, who are otherwise without the ability to access public information and may be subjected to abusive

practices during their ongoing, indefinite, and illegal internment at Guantanamo, Plaintiff seeks an order requiring Defendants to immediately process the Request and to release all records that have been unlawfully withheld.

JURISDICTION AND VENUE

7. This Court has jurisdiction over this action and these parties pursuant to 5 U.S.C. § 552 (a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 5 U.S.C. § 701-706 (APA) and 28 U.S.C. § 1331 (federal question jurisdiction). Venue lies in this district pursuant to 5 U.S.C. § 552 (a)(4)(A) and (B).

PARTIES

8. Plaintiff Stephen H. Oleskey resides and has his principal place of business in this judicial district. He is an attorney duly licensed to practice law in the Commonwealth of Massachusetts and is a partner in the firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 60 State Street, Boston, 02109.

9. Defendant DOD is a Department of the Executive Branch of the U.S. Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendant DOJ is a Department of the Executive Branch of the U.S. Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

FACTS

I. INTERNMENT OF REQUESTERS BY THE U.S. MILITARY AT GUANTANAMO AND REPORTED TORTURE AND ABUSES OF INTERNEES

11. Requesters are six Algerian-born residents of Bosnia and Herzegovina who were seized by the U.S. military on or about January 18, 2002 in Sarajevo, Bosnia and Herzegovina ("Bosnia"). All of the six men had lived with their wives and children in Bosnia for several years prior to their arrest.

12. Bosnian authorities arrested Requesters between October 8 and 21, 2001, and held them in pre-trial detention, based on demands relayed by the U.S. Embassy in Sarajevo. All six were either at work or at home with their families when local police asked them to accompany the police for questioning. None has returned home. When neither requests to the United States by the Bosnian government nor the Bosnian government's own 90 day investigation produced any evidence to support the arrests, the highest court of Bosnia, at the recommendation of the Chief Prosecutor, ordered Requesters be released. On January 18, 2002, pursuant to the Bosnian Court's order, Requesters were released from a Bosnian jail; however, despite the Court's order, Requesters were illegally seized by Bosnian and U.S. forces and delivered to the United States military, again, at the instance of the United States Government.

13. Requesters were given rudimentary medical examinations by U.S. forces at Sarajevo and, on information and belief, at a U.S. base in Europe. Throughout two days in transit, they were masked, gagged, and bound hand and foot. Their clothes were taken from them, and they were required to sit on concrete floors in sub-freezing temperatures for hours. On January 19, Requesters were delivered to Guantanamo.

14. Despite more than three years of internment and interrogation, Requesters have not been charged with any offense by the United States or been notified of any pending or contemplated charges.

15. On August 16, 2004, Plaintiff filed an amended petition for writ of *habeas corpus* on behalf of Requsters, and by and through their wives as "next friends," in the United States District Court for the District of Columbia (Boumediene, et al, No. 04-1166 (RJL)). The petition challenges the legality of the ongoing detention of Requesters. The petition was dismissed on February 18, 2005, and the case is now on appeal before the United States Court of Appeals for the District of Columbia (Docket No. 05-5062).

16. DOD and DOJ have repeatedly and publicly contended that the protections of the Geneva Convention do not apply to Requesters, or to others held at Guantanamo. It is unclear to Plaintiff what policies, if any, are being followed to ensure the safety and humane treatment of Requesters at Guantanamo. Moreover, no documentation has been made available to the public or to Requesters' families as to whether persecution and torture of Requesters have been investigated or documented – or worse – authorized, overlooked, or acquiesced to, by federal agencies, including Defendants.

17. Plaintiff is aware that Mustafa Ait Idir, one of the Requesters, has been severely beaten and injured during his internment at Guantanamo. Upon information and belief, incident reports, digital or film recordings, medical records, and other records exist at Guantanamo related to some or all of those beatings.

18. On one occasion, Requester Ait Idir was alone in his cell when he was told guards wanted to search his cell. They instructed him to sit on the floor, which he did. The guards

secured his hands behind his back and, while he was so restrained, the guards picked him up and slammed his body and his head into the steel bunk in his cell. They then threw him on the floor and continued to pound his body and bang his head into the floor.

19. The guards picked him up again and banged his head on the toilet in his cell. The guards picked him up again, stuffed Mr. Ait Idir's face in the toilet and repeatedly pressed the flush button. Mr. Ait Idir was starting to suffocate, and he feared he would drown.

20. The guards then carried Mr. Ait Idir outside the cell and threw him on the ground. His hands still were manacled behind his back. They held him down and pushed a garden hose into his mouth. They opened the spigot. As the water rushed in, Mr. Ait Idir began to choke. The water was coming out of his mouth and nose. He could not breathe, and he could not yell to stop or for help. The guards then took the hose out of his mouth and held it approximately 6 to 10 inches in front of his face. He was still being restrained. The water ran full force into his face; he could not breathe. A few days later, he was treated by doctors because of severe bruising all over his body.

21. Requester Ait Idir later was told that the guard who attacked him claimed in a false written report that Mr. Ait Idir had assaulted the guard. Defendants have not provided any such report to Plaintiff.

22. On another occasion, Requester Ait Idir was severely beaten because of his religious beliefs. In early 2004, Mr. Ait Idir and many others were stripped of their pants, which Muslim men must wear for prayers. There were two rows of 24 cells. Guards approached the internee in each cell and demanded that the internee give up his pants. The internees repeatedly told the guards that they could not give up their pants because they would not be able to pray without

them. The guards threatened to take their pants by force if the internees refused to give them up. A special team known as the Immediate Response Force (IRF) was present and available to go into a cell if the internee refused. There were a number of U.S. military officers present.

23. When Mr. Ait Idir was asked for his pants, he explained that he needed to keep them in order to pray. The guards refused his plea and demanded the pants. The reason the guards demanded the pants was to harass the men in their efforts to practice their religion. The guards insisted he could keep only his underwear. Mr. Ait Idir explained that he could not pray in his underwear. A colonel demanded the pants. Mr. Ait Idir offered to give up his pants so long as he could have them back for prayers. The colonel refused.

24. As threatened, the IRF came into Mr. Ait Idir's cell to forcibly remove his pants. He was sprayed in the face with chemical irritant, and one IRF member squeezed Mr. Ait Idir's testicles until he fell to the ground in a fetal position. The IRF members jumped repeatedly on Mr. Ait Idir's body while he was prone and his face was down.

25. After the IRF had secured Mr. Ait Idir's hands behind his back on the ground, and after he was fully under their control, one of the IRF members slowly bent Mr. Ait Idir's fingers back until one of them broke. The pain was excruciating, but Mr. Ait Idir was afraid that if he screamed, the IRF would react by injuring him further. After his finger was broken, he was refused any medical attention, despite his repeated requests.

26. A few days later, guards again came to search his cell. Mr. Ait Idir sat alone in his cell. An officer approached the window opening in his cell door and ordered Mr. Ait Idir to sit on the floor with his hands behind his back. He did so. The officer said that the guards would remove Mr. Ait Idir, search his cell, and then return him to his cell. As he finished speaking, while Mr.

Ait Idir sat on the floor as instructed, the officer sprayed chemical irritant directly into Mr. Ait Idir's face. Two or three guards immediately entered the cell while he was lying on the floor. One forced Mr. Ait Idir's body onto the steel floor of the cell and jumped on his back, using his knees to pound Mr. Ait Idir's body into the floor. The second guard did the same thing. While they had Mr. Ait Idir pinned, the guards secured his hands behind his back.

27. He was carried out and thrown onto the crushed stones that surround the cell building. While Mr. Ait Idir was lying bound on the stones, an IRF member jumped onto the side of Mr. Ait Idir's head with his full body weight, causing extreme pain. Another IRF member climbed onto Mr. Ait Idir's back, and while on his back, the IRF members twisted his middle finger and thumb on his right hand back almost to the point of breaking. Two of his knuckles were dislocated, and he screamed in pain. His middle finger has almost no strength now. He requested and was refused any medical treatment for the permanent injuries inflicted by the guards.

28. Upon information and belief, as a result of that beating, Mr. Ait Idir suffered a stroke. Shortly after that incident, one half of his face became paralyzed. He was in pain. He could not eat normally; food and drink leaked from his non-functioning mouth. Guards teased him because of the condition. Despite visible impairment and his request to go to the hospital, he did not receive medical treatment for ten days. A DOD doctor later diagnosed his condition as "Bell's Palsy." He eventually was given medication and told it would eliminate the symptoms, but not cure him. He continues to experience pain.

29. Upon information and belief, Defendants possess records, including film or digital media recordings of the IRF's actions, relating to the above described conduct and medical condition but have failed and refused to produce them, despite their obligation under 5 U.S.C. § 552 *et seq.*

II.    PLAINTIFF'S SEPTEMBER 2004 FOIA REQUEST AND DEFENDANTS' FAILURES TO RESPOND TO THE REQUEST

30. Pursuant to the Freedom of Information Act, on September 28, 2004, Plaintiff requested from Defendants all policies, procedures or guidelines governing conditions of detention, methods of interrogation, or treatment of detainees at Guantanamo (Request 14). The Request also seeks records of investigations relating to conditions of detention or interrogations at Guantanamo (Request 17) and records of any disciplinary actions taken against Guantanamo personnel for deviating from such policies in general (Request 15), or in connection with Requesters (Request 16). Plaintiff also seeks information about physical or psychological conditions used at Guantanamo to elicit cooperation from or to punish Requesters (Requests 11, 13).

31. Plaintiff seeks on behalf of Requesters, certain records known to exist, including Requesters' medical files at Guantanamo (Requests 10, 11); records of interrogations of Requesters (Requests 4, 6, 11); records of punishments or disciplinary actions against Requesters (Request 13); records relating to a visit from Amir Pilav of the Ministry of Justice, Bosnia and Herzegovina, to Guantanamo in July 2004 (Request 5); and records relating to an inspection of conditions of detention at Guantanamo conducted on or about May 6, 2004 by Admiral Church (Request 17). Plaintiff has obtained signed releases of medical records from Requesters. See Attachment B.

32. Plaintiff also seeks information about how and under what conditions Requesters were transferred from Bosnia into U.S. custody (Requests 1, 2, 3, 4). The Request specifically asks for records of all communications regarding Requesters between the United States and the government of Bosnia and Herzegovina (Request 1) and any records of interrogations of Requesters while in the custody of Bosnian authorities (Request 4).

## Department of Defense

33. By letter dated October 6, 2004, from C.Y. Talbott, Chief, Office of Freedom of Information and Security Review, DOD, Defense Pentagon, Washington, D.C. 20301-1155, DOD informed Plaintiff that his FOIA request had been received and that his request for expedited processing had been granted. The letter identified Ms. Mary Wahling as the contact person for Plaintiff's request and indicated that Plaintiff would be notified when his request was completed. DOD also provided an internal reference number assigned to Plaintiff's request. See Attachment C.

34. By letter dated November 8, 2004, from Jean Carrillo, Lieutenant, U.S. Navy, Adjutant General, U.S. Southern Command, DOD, Miami, Florida 33172-1217, U.S. Southern Command ("SOUTHCOM"), a component of DOD, informed Plaintiff that his FOIA request had been received from DOD Office of Freedom of Information and Security Review. SOUTHCOM indicated that the Request was being processed and that Plaintiff would have a response soon. SOUTHCOM also provided an internal reference number assigned to Plaintiff's request. See Attachment D.

35. On February 17, 2005, Plaintiff's colleague called Ms. Mary Wahling of DOD by telephone to inquire as to the status of the Request and to determine the date DOD would

produce the records requested. Ms. Wahling said: (1) SOUTHCOM had not provided any records to DOD in Washington, D.C., (2) DOD would not produce responsive records on a rolling basis, and (3) DOD could not estimate when Plaintiff would receive a response to the Request.

36. By letter dated March 4, 2005 Plaintiff informed DOD and SOUTHCOM, that DOD had failed to respond to the Request despite having granted Plaintiff's request for expedited processing. Plaintiff asked DOD immediately to begin production of responsive records, on a rolling basis, and he informed the agency of his intent to file this lawsuit to enforce his right to a timely response under FOIA. See Attachment E.

### Department of Justice

37. By letter dated October 22, 2004, Ronald L. Deacon, Director, Facilities and Administrative Services Staff, DOJ, Justice Management Division, Washington, D.C. 20530, informed Plaintiff that his FOIA request had been received by DOJ's receipt and referral unit for FOIA requests. See Attachment F.

38. Plaintiff has received no further information from DOJ regarding the Request.

### CAUSES OF ACTION

### First Cause of Action:
### Violation of FOIA for Failure to Expedite the Processing of Plaintiff's Request

39. Plaintiff incorporates by reference and realleges paragraphs 1-38.

40. Defendants' failure to expedite the processing of Plaintiff's September 28, 2005, request violates FOIA, 5 U.S.C. § 552 (a)(6)(E)(iii), and Defendants' own regulations promulgated thereunder.

Second Cause of Action:
Violation of FOIA for Failure to Make Promptly Available
the Records Sought by Plaintiff's Request

41. Plaintiff incorporates by reference and realleges paragraphs 1-38.

42. Defendants' failure to make promptly available the records sought by the Request violates FOIA, 5 U.S.C. § 552 (a)(3)(A).

Third Cause of Action:
Violation of FOIA for Failure to Timely Respond to Plaintiff's Request

43. Plaintiff incorporates by reference and realleges paragraphs 1-38.

44. Defendants' failure to timely respond to the Request violates FOIA, 5 U.S.C. § 552 (a)(6)(A)(i), and Defendants' own regulations promulgated thereunder.

Fourth Cause of Action:
Violation of FOIA for Failure to Release Records Sought by Plaintiff's Request

45. Plaintiff incorporates by reference and realleges paragraphs 1-38.

46. Defendants' failures to release records sought by the Request or to make publicly available administrative staff manuals and instructions to staff violates FOIA, 5 U.S.C. § 552 (a).

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

a)  ORDER Defendants to process immediately and expeditiously Plaintiff's FOIA request

of September 28, 2004, and to disclose the records requested;

b)  EXPEDITE this proceeding as provided for in 28 U.S.C. § 1657;

c)  SET a schedule for producing requested records to Plaintiff;

d)  AWARD Plaintiff his costs and reasonable attorneys fees incurred in this action; and

e)  GRANT such other relief as the Court may deem just and proper.

Respectfully Submitted,

_____
Robert C. Kirsch (BBO #541755)
Melissa A. Hoffer (BBO #641667)
Lynne C. Soutter (BBO #657934)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

DATED:   April 13, 2005

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained ....ein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Stephen H. Oleskey

**DEFENDANTS**

Department of Defense
Department of Justice

**(b)** County of Residence of First Listed Plaintiff ____Norfolk____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) (617) 526-6000
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

Attorneys (If Known)

U.S. Attorney

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 5 U.S.C. §552

Brief description of cause:
Seeking an order to compel production of requested records

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____     DOCKET NUMBER _____

DATE
4/13/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)___ Stephen H. Oleskey v. United States
          Department of Defense

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
    rule 40.1(a)(1)).

    [ ]    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    [XX]   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    [ ]    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 3__,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 3__,
                 380, 385, 450, 891.

    [ ]    IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

    [ ]    V.    150, 152, 153.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
    district please indicate the title and number of the first filed case in this court.
    _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                    YES  [ ]        NO  [XX]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC
    §2403)
                                                    YES  [ ]        NO  [XX]
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                    YES  [ ]        NO  [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                    YES  [ ]        NO  [XX]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                    YES  [XX]       NO  [ ]

    A.    If yes, in which division do all of the non-governmental parties reside?

          Eastern Division  [XX]        Central Division  [ ]        Western Division  [ ]

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
          residing in Massachusetts reside?

          Eastern Division  [ ]         Central Division  [ ]        Western Division  [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes,
    submit a separate sheet identifying the motions)
                                                    YES  [ ]        NO  [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Robert C. Kirsch, Wilmer Cutler Pickering Hale & Dorr LLP
ADDRESS           60 State Street, Boston, MA 02109
TELEPHONE NO.     617-526-6000

(CategoryForm.wpd - 2/15/05)



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION AND SECURITY REVIEW
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

Ref: 04-F-2832

OCT 0 6 2004

Mr. Stephen H. Oleskey
Wilmer Cutler Pickering and Dorr LLP
60 State Street
Boston, MA 02109

Dear Mr. Oleskey:

This is in response to your September 28, 2004, Freedom of Information Act (FOIA), which was received by this Office on September 29, 2004.

Your request for expedited processing has been approved and assigned the case number referenced above. The actual processing time of your request will depend upon the complexity of the search, whether sensitive records are involved, the volume of records to be searched, the location of the records and the coordination/consultation required to determine release of information.

You will be notified by this office when your request has been completed. Questions regarding this action may be referred to Ms. Mary Wahling, (703) 614-2411 or to Mr. Chris Marye, (703) 614-5456.

Sincerely,

C. Y. Talbott
Chief

**WILMER CUTLER PICKERING
HALE AND DORR LLP
FILE COPY**



*cc: Team*



REPLY TO
ATTENTION OF

**DEPARTMENT OF DEFENSE**
UNITED STATES SOUTHERN COMMAND
3511 NW 91ST AVENUE
MIAMI, FL 33172-1217

November 08, 2004

Directorate of Manpower, Personnel
  and Administration

Ref: SC 05-007

Mr. Stephen H. Oleskey
Wilmer Cutler Pickering and Dorr LLP
60 State Street
Boston, MA 02109

Dear Mr. Oleskey:

   We received from the Office of Freedom of Information and Security Review your Freedom of Information Act request of 28 September 2004; wherein you are requesting information related to six detainees at Guantanamo Bay, Cuba.

   Your request has been assigned case number SC 05-007  We are processing it and will be responding to you in the near future.

                         Sincerely,

                         Jean Carrillo
                         Lieutenant, U.S. Navy
                         Adjutant General

WILMER CUTLER PICKERING
HALE AND DORR LLP

Stephen H. Oleskey

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6544
+1 617 526 5000 fax
stephen.oleskey@wilmerhale.com

September 28, 2004

H.J. McIntyre
Director, Freedom of Information & Security Review
1155 Defense Pentagon, Room 2C757
Washington, D.C. 20301-1155

Re:    Freedom of Information Act Request

Dear Director McIntyre:

This letter constitutes a request for records pursuant to the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552 *et seq.*, and corresponding regulations. This request is submitted on
behalf of the following individuals (collectively, "Requesters") who are presently detained at
Guantanamo Bay Naval Base, Cuba ("Guantanamo"): Lakhdar Boumediene, Mohammed
Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem.

## I.    Records Sought

Requesters seek all records in any way relating to, pertaining to, or mentioning any or all of them
and the detention of any or all of them by any and all persons or entities, including all persons
acting on behalf of the United States. Without limiting any of the above, Requesters specifically
seek all records concerning the Government's custody and interrogations of them. Requests for
"records concerning Requesters" will include any records in any form, including electronic
media, that in any way concern, relate to, pertain to, refer to, or mention any or all of the
Requesters. Accordingly, Requesters seek the following records:

1) Correspondence and records, including, but not limited to, notes, e-mail, and telephone
records of communications between the federal government and the government of Bosnia
and Herzegovina or any person or organization in Bosnia and Herzegovina concerning
Requesters;

2) Records concerning the transfer of custody of Requesters from Bosnia and Herzegovina to
the United States in January 2002;

3) Records concerning the transport of Requesters from Bosnia and Herzegovina to
Guantanamo, including, but not limited to, records of the transport itinerary, duration of the
flight, and measures taken with respect to physically securing Requesters during transport;

4) Records of communications with, interrogations and interviews of (referred to collectively as
"interrogations") Requesters while in the custody of Bosnia and Herzegovina, including,
without limitation:

H.J. McIntyre
September 28, 2004
Page 2

    a) Any statements made by Requesters;

    b) Any transcriptions of the interrogations;

    c) Any photographs, video, audio, digital or other contemporaneous recordings of the interrogations;

    d) Records concerning the conditions to which Requesters were subject during the interrogations;

    e) Records concerning the mental or physical condition of Requesters during or after the interrogations;

    f) Records containing, or in any way relating or referring to, information provided by or derived from information obtained from Requesters;

5) Records concerning access to Requesters granted or denied to foreign governments or non-governmental organizations, including, but not limited to, records relating to a visit from representatives of the government of Bosnia and Herzegovina to Guantanamo in or about July 2004;

6) Records of interrogations of Requesters while in the custody of the United States, including, without limitation:

    a) Any statements made by Requesters;

    b) Any transcriptions of the interrogations;

    c) Any photographs, video, audio, digital or other contemporaneous recordings of the interrogations;

    d) Any records of the conditions to which Requesters were subjected during the interrogations;

    e) Records concerning the mental or physical condition of Requesters during or after the interrogations;

    f) Records concerning any interaction the Joint Intelligence Group at Guantanamo had with Requesters;

    g) Records containing, or in any way relating or referring to, information provided by or derived from Requesters;

7) Records concerning Requesters that contain information supplied by military police, the Joint Detention Operations Group, or other persons who monitor detainees in Guantanamo;

H.J. McIntyre
September 28, 2004
Page 3

8) Records containing information supplied by intelligence officers, interrogators at Guantanamo, or the Joint Intelligence Group concerning Requesters;

9) Records concerning Requesters that contain statements made by other Guantanamo detainees or terrorist suspects;

10) Medical records and information concerning Requesters, including, without limitation:

   a) Records and information concerning the physical condition of Requesters;

   b) Records of any medical conditions experienced by Requesters;

   c) Records of any medical and/or psychiatric treatments provided, requested, or denied while in U.S. custody;

   d) Records of the mental health or psychological conditions of Requesters;

   e) Records concerning the identities of every person who has or did have any responsibility to observe, record, address, cure, modulate, monitor, or in any way reflect upon the physical or mental health conditions of Requesters;

   f) Records concerning any procedures, instructions, orders, or guidance provided to medical personnel with respect to their duties at Guantanamo;

11) Records concerning any physical or psychological conditions to which Requesters were subject while in U.S. custody, including, without limitation:

   a) Records concerning physical or psychological abuses of Requesters;

   b) Records concerning physical or psychological conditions used to elicit cooperation from Requesters, including, but not limited to: use of shackles; solitary confinement; use of psychoactive drugs; modulation of temperature; withholding of food or water; exposure to weather elements; use of straight jackets; use of dogs to intimidate and/or coerce or attack; threatening the well-being of Requesters' families or otherwise intimating that their families would be harmed; cavity searches; forcing Requesters to hold specific body positions for extended periods of time; sleep deprivation; sensory deprivation or sensory overload, *e.g.*, by exposure to very bright lights at night, by exposure to loud music or noise; withholding or damaging the Koran; withholding communications to or from Requesters' families and/or representatives of the government of Bosnia and Herzegovina.

   c) Records concerning physical or psychological conditions used to punish Requesters, including, but not limited to: use of shackles; solitary confinement; use of psychoactive drugs; modulation of temperature; withholding of food or water; exposure to weather elements; use of straight jackets; use of dogs to intimidate and/or coerce or attack;

H.J. McIntyre
September 28, 2004
Page 4

threatening the well-being of Requesters' families or otherwise intimating that their families would be harmed; cavity searches; forcing Requesters to hold specific body positions for extended periods of time; sleep deprivation; sensory deprivation or sensory overload, *e.g.*, by exposure to very bright lights at night, by exposure to loud music or noise; withholding or damaging the Koran; withholding communications to or from Requesters' families and/or representatives of the government of Bosnia and Herzegovina;

   d) Records concerning treatment of Requesters by interrogators, including, but not limited to, any plans, instructions, orders, guidance or procedures governing interrogations, and any records of any person objecting to or refusing to comply with such instructions;

12) Records concerning any contact, communication, or interaction between the International Committee for the Red Cross ("Red Cross"), or any other non-governmental organization, and Requesters, including, but not limited to, records related to decisions to grant or deny the Red Cross access to any Requester;

13) Records concerning any contact, communication or interaction between any military personnel or special forces unit and Requesters, including, without limitation:

   a) Records concerning any contact or interaction between the Extreme Reaction Force ("ERF") or the Immediate Response Force ("IRF") in Guantanamo and Requesters;

   b) Records concerning any disciplinary action or punishment against Requesters;

14) Records relating to policies, procedures or guidelines governing conditions of detention, methods of interrogation, or treatment of detainees at Guantanamo;

15) Records relating to investigations, inquiries, observations, inspections or disciplinary proceedings initiated in relation to actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 14, above, including, but not limited to, records indicating the existence of such investigations, inquiries, observations, inspections or disciplinary proceedings;

16) Records concerning any investigation of or disciplinary action taken against any guard, military police, intelligence officer, military personnel or civilian in connection with Requesters;

17) Records of any investigations, inquiries, observations, or inspections relating to conditions of detention or interrogations at Guantanamo, including, but not limited to:

   a) Records concerning a visit by Admiral Church to Guantanamo on or about May 6, 2004;

   b) Records prepared by Admiral Church concerning his visit to Guantanamo on or about May 6, 2004;

H.J. McIntyre
September 28, 2004
Page 5

  c) Records concerning any observations of detention at Guantanamo by the Red Cross or
     any other non-governmental organization.

## 2.    Requesters Are Entitled to Expedited Processing

Expedited processing of a FOIA request is warranted when there is an "imminent loss of
substantial due process rights and humanitarian need." 32 C.F.R. § 286.4(d)(3)(iv). Here, the
denial of Requesters' substantial due process rights is not only imminent, but also present and
on-going. Requesters' have been detained by the U.S. Military in Guantanamo for more than
two years without access to a lawyer or any legitimate legal process. Requesters' families and
the public have not been provided with information concerning Requesters' medical health or
treatment, and, given recent accounts of abuses of detainees by the military's Extreme Reaction
Force, there is reason to believe that Requesters are threatened with unlawful punishments
amounting to torture. *See, e.g.,* Shafia Rasul, Asif Iqbal and Rhuhel Ahmed, *Composite
Statement: Detention in Afghanistan and Guantanamo Bay, ¶ 300 (available at* www.ccr-ny.org)
(former detainees describing abusive conditions at Guantanamo for Algerian-Bosnian detainees);
AP, *Three Britons allege abuses under U.S. custody at Guantanamo,* USA Today.com, August 4,
2004; David Rose and Gaby Hinsliff, *US Guards 'Filmed Beatings' at Terror Camp,*
Observer.Guardian.uk.com, May 16, 2004; *Bosnian Citizens Imprisoned at Guantanamo
Complain About Health Problems,* BBC Monitoring International Reports, August 3, 2004;
Department of Justice, *Working Group Report on Detainee Interrogations in the Global War on
Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations,* March 6,
2003 (rationalizing that compliance with international treaties and U.S. laws prohibiting torture
could be overlooked because of legal technicalities and national security needs).

                        *       *       *       *

It is our understanding that much of the requested information is maintained together in a manner
readily accessible to the Department, because Secretary Gordon England has stated that the
Department repeatedly reviews the files of each Guantanamo detainee in order to justify their
continued detention and because the Department has an on-going obligation to monitor the
health of persons held in U.S. custody.[1]  For these reasons, both the health and interrogation
records concerning each Requester should be readily accessible to the Department.

FOIA and DoD implementing regulations provide that if some parts of records containing the
requested information are exempt from mandatory disclosure, then non-exempt materials shall be
disclosed after the exempt material has been deleted. *See* 5 U.S.C. § 552(b); 32 C.F.R. §
286.23(d).  Therefore, if you determine some portion of a record that is responsive to this request
is exempt, please provide a copy of the remainder of the record. Additionally, if you determine
that some or all of the requested records are exempt from disclosure, please provide a list or
index of the records withheld, the exemption invoked, an estimation of the volume of records

---

[1] Secretary England, speaking to the BBC on August 5, 2004, said that the status of each detainee had been reviewed
eight times before.

H.J. McIntyre
September 28, 2004
Page 6

denied, and the reasons why a discretionary release of the records would not be appropriate under DoD implementing regulations and the agency's FOIA policy. *See* 32 C.F.R. § 286.23(e).

This request has also been sent to the Department of Justice and the Department of Homeland Security. Requesters are willing reimburse up to $5,000 of search and duplication fees incurred, in aggregate, by responding agencies related to this request.

Thank you for your consideration of this request. Please direct all future responses to my attention at:

> Stephen H. Oleskey, Esq.
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, Massachusetts 02109
> Telephone (617) 526-6544
> Facsimile  (617) 526-5000

If you need to reach someone by telephone about this request, you also may contact my associate, Lynne Soutter, at (617) 526-6447.

Sincerely,

Stephen H. Oleskey

Attorney for Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem.

<u>DECLARATION OF STEPHEN H. OLESKEY</u>
<u>IN SUPPORT OF REQUEST FOR EXPEDITED PROCESSING</u>

I, Stephen H. Oleskey, declare pursuant to 5 U.S.C. § 552 and 32 C.F.R. §

286.4(d)(3)(iv):

1.    I am Senior Partner at the law firm of Wilmer Cutler Pickering Hale and Dorr
LLP, 60 State Street, Boston, Massachusetts, 02109. I submit this declaration in
support of the Freedom of Information Act Request filed today on behalf of
Requesters, Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber
Lahmar, Hadj Boudella, and Bensayah Belkacem.

2.    I currently represent Requesters in a *habeas corpus* case filed in federal district
court, wherein the continued detention of Requesters in Guantanamo Bay Naval
Base, Cuba ("Guantanamo") is challenged as unlawful and unconstitutional.

3.    The United States Military has denied and continues to deny Requesters'
substantial due process rights. Requesters' have been detained by the U.S.
Military in Guantanamo for more than two years without access to a lawyer or
any legitimate legal process.

4.    Requesters' due process rights continue to be denied by their ongoing detention
and are additionally threatened by imminent Combatant Status Review Tribunals,
to which they are subject and for which they are not provided access to counsel.

5.    Requesters' families and the public have not been provided with information
concerning Requesters' medical health or treatment during their detention *(see
Bosnian Citizens Imprisoned at Guantanamo Complain About Health Problems,*
BBC Monitoring International Reports, August 3, 2004).

6.    Former detainees have recounted that Requesters were subject to abusive
conditions in Guantanamo *(see* Shafia Rasul, Asif Iqbal and Rhuhel Ahmed,
*Composite Statement: Detention in Afghanistan and Guantanamo Bay, ¶ 300*
*(available at* www.ccr-ny.org)), and the media has reported abuses by the
military's Extreme Reaction Force *(see* AP, *Three Britons allege abuses under*
*U.S. custody at Guantanamo,* USA Today.com, August 4, 2004; David Rose and
Gaby Hinsliff, *US Guards 'Filmed Beatings' at Terror Camp,*
Observer.Guardian.uk.com, May 16, 2004). These facts indicate that Requesters
may have been threatened with unlawful punishments amounting to torture.

I hereby declare that the foregoing is true and correct to the best of my knowledge.

Executed at Boston, Massachusetts on September 28, 2004.

Stephen H. Oleskey
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000

WILMER CUTLER PICKERING
HALE AND DORR LLP

September 28, 2004

Stephen H. Oleskey

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6544
+1 617 526 5000 fax
stephen.oleskey@wilmerhale.com

Patricia Harris, Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 114, LOC
Washington, D.C. 20530-0001

Re:    Freedom of Information Act Request

Dear Ms. Harris:

This letter constitutes a request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and corresponding regulations. This request is submitted on behalf of the following individuals (collectively, "Requesters") who are presently detained at Guantanamo Bay Naval Base, Cuba ("Guantanamo"): Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem.

**I.    Records Sought**

Requesters seek all records in any way relating to, pertaining to, or mentioning any or all of them and the detention of any or all of them by any and all persons or entities, including all persons acting on behalf of the United States. Without limiting any of the above, Requesters specifically seek all records concerning the Government's custody and interrogations of them. Requests for "records concerning Requesters" will include any records in any form, including electronic media, that in any way concern, relate to, pertain to, refer to, or mention any or all of the Requesters. Accordingly, Requesters seek the following records:

1) Correspondence and records, including, but not limited to, notes, e-mail, and telephone records of communications between the federal government and the government of Bosnia and Herzegovina or any person or organization in Bosnia and Herzegovina concerning Requesters;

2) Records concerning the transfer of custody of Requesters from Bosnia and Herzegovina to the United States in January 2002;

3) Records concerning the transport of Requesters from Bosnia and Herzegovina to Guantanamo, including, but not limited to, records of the transport itinerary, duration of the flight, and measures taken with respect to physically securing Requesters during transport;

4) Records of communications with, interrogations and interviews of (referred to collectively as "interrogations") Requesters while in the custody of Bosnia and Herzegovina, including, without limitation:

Patricia Harris
September 28, 2004
Page 2

    a) Any statements made by Requesters;

    b) Any transcriptions of the interrogations;

    c) Any photographs, video, audio, digital or other contemporaneous recordings of the interrogations;

    d) Records concerning the conditions to which Requesters were subject during the interrogations;

    e) Records concerning the mental or physical condition of Requesters during or after the interrogations;

    f) Records containing, or in any way relating or referring to, information provided by or derived from information obtained from Requesters;

5) Records concerning access to Requesters granted or denied to foreign governments or non-governmental organizations, including, but not limited to, records relating to a visit from representatives of the government of Bosnia and Herzegovina to Guantanamo in or about July 2004;

6) Records of interrogations of Requesters while in the custody of the United States, including, without limitation:

    a) Any statements made by Requesters;

    b) Any transcriptions of the interrogations;

    c) Any photographs, video, audio, digital or other contemporaneous recordings of the interrogations;

    d) Any records of the conditions to which Requesters were subjected during the interrogations;

    e) Records concerning the mental or physical condition of Requesters during or after the interrogations;

    f) Records concerning any interaction the Joint Intelligence Group at Guantanamo had with Requesters;

    g) Records containing, or in any way relating or referring to, information provided by or derived from Requesters;

7) Records concerning Requesters that contain information supplied by military police, the Joint Detention Operations Group, or other persons who monitor detainees in Guantanamo;

Patricia Harris
September 28, 2004
Page 3

8) Records containing information supplied by intelligence officers, interrogators at Guantanamo, or the Joint Intelligence Group concerning Requesters;

9) Records concerning Requesters that contain statements made by other Guantanamo detainees or terrorist suspects;

10) Medical records and information concerning Requesters, including, without limitation.

   a) Records and information concerning the physical condition of Requesters;

   b) Records of any medical conditions experienced by Requesters;

   c) Records of any medical and/or psychiatric treatments provided, requested, or denied while in U.S. custody;

   d) Records of the mental health or psychological conditions of Requesters;

   e) Records concerning the identities of every person who has or did have any responsibility to observe, record, address, cure, modulate, monitor, or in any way reflect upon the physical or mental health conditions of Requesters;

   f) Records concerning any procedures, instructions, orders, or guidance provided to medical personnel with respect to their duties at Guantanamo;

11) Records concerning any physical or psychological conditions to which Requesters were subject while in U.S. custody, including, without limitation:

   a) Records concerning physical or psychological abuses of Requesters;

   b) Records concerning physical or psychological conditions used to elicit cooperation from Requesters, including, but not limited to: use of shackles; solitary confinement; use of psychoactive drugs; modulation of temperature; withholding of food or water; exposure to weather elements; use of straight jackets; use of dogs to intimidate and/or coerce or attack; threatening the well-being of Requesters' families or otherwise intimating that their families would be harmed; cavity searches; forcing Requesters to hold specific body positions for extended periods of time; sleep deprivation; sensory deprivation or sensory overload, *e.g.*, by exposure to very bright lights at night, by exposure to loud music or noise; withholding or damaging the Koran; withholding communications to or from Requesters' families and/or representatives of the government of Bosnia and Herzegovina.

   c) Records concerning physical or psychological conditions used to punish Requesters, including, but not limited to: use of shackles; solitary confinement; use of psychoactive drugs; modulation of temperature; withholding of food or water; exposure to weather elements; use of straight jackets; use of dogs to intimidate and/or coerce or attack;

Patricia Harris
September 28, 2004
Page 4

threatening the well-being of Requesters' families or otherwise intimating that their families would be harmed; cavity searches; forcing Requesters to hold specific body positions for extended periods of time; sleep deprivation; sensory deprivation or sensory overload, *e.g.*, by exposure to very bright lights at night, by exposure to loud music or noise; withholding or damaging the Koran; withholding communications to or from Requesters' families  and/or representatives of the government of Bosnia and Herzegovina;

d)  Records concerning treatment of Requesters by interrogators, including, but not limited to, any plans, instructions, orders, guidance or procedures governing interrogations, and any records of any person objecting to or refusing to comply with such instructions;

12) Records concerning any contact, communication, or interaction between the International Committee for the Red Cross ("Red Cross"), or any other non-governmental organization, and Requesters, including, but not limited to, records related to decisions to grant or deny the Red Cross access to any Requester;

13) Records concerning any contact, communication or interaction between any military personnel or special forces unit and Requesters, including, without limitation:

a)  Records concerning any contact or interaction between the Extreme Reaction Force ("ERF") or the Immediate Response Force ("IRF") in Guantanamo and Requesters;

b)  Records concerning any disciplinary action or punishment against Requesters;

14) Records relating to policies, procedures or guidelines governing conditions of detention, methods of interrogation, or treatment of detainees at Guantanamo;

15) Records relating to investigations, inquiries, observations, inspections or disciplinary proceedings initiated in relation to actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 14, above, including, but not limited to, records indicating the existence of such investigations, inquiries, observations, inspections or disciplinary proceedings;

16) Records concerning any investigation of or disciplinary action taken against any guard, military police, intelligence officer, military personnel or civilian in connection with Requesters;

17) Records of any investigations, inquiries, observations, or inspections relating to conditions of detention or interrogations at Guantanamo, including, but not limited to:

a)  Records concerning a visit by Admiral Church to Guantanamo on or about May 6, 2004;

b)  Records prepared by Admiral Church concerning his visit to Guantanamo on or about May 6, 2004;

Patricia Harris
September 28, 2004
Page 5

    c) Records concerning any observations of detention at Guantanamo by the Red Cross or any other non-governmental organization.

## 2. Requesters Are Entitled to Expedited Processing

Expedited processing of a FOIA request is warranted when it involves "the loss of substantial due process rights." 28 C.F.R. § 16.5(d)(iii). Here, the denial of Requesters' substantial due process rights is not only imminent, but also present and on-going. Requesters' have been detained by the U.S. Military in Guantanamo for more than two years without access to a lawyer or any legitimate legal process. Requesters' families and the public have not been provided with information concerning Requesters' medical health or treatment, and, given recent accounts of abuses of detainees by the military's Extreme Reaction Force, there is reason to believe that Requesters are threatened with unlawful punishments amounting to torture. *See, e.g.,* Shafiq Rasul, Asif Iqbal and Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay, ¶ 300 (available at* www.ccr-ny.org) (former detainees describing abusive conditions in Guantanamo for Algerian-Bosnian detainees); AP, *Three Britons allege abuses under U.S. custody at Guantanamo,* USA Today.com, August 4, 2004; David Rose and Gaby Hinsliff, *US Guards 'Filmed Beatings' at Terror Camp,* Observer.Guardian.uk.com, May 16, 2004; *Bosnian Citizens Imprisoned at Guantanamo Complain About Health Problems,* BBC Monitoring International Reports, August 3, 2004; Department of Justice, *Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations,* March 6, 2003 (rationalizing that compliance with international treaties and U.S. laws prohibiting torture could be overlooked because of legal technicalities and national security needs).

*    *    *    *

It is our understanding that much of the requested information is maintained together in a manner readily accessible to the Department, because Secretary Gordon England has stated that the Department repeatedly reviews the files of each Guantanamo detainee in order to justify their continued detention and because the Department has an on-going obligation to monitor the health of persons held in U.S. custody.[1] For these reasons, both the health and interrogation records concerning each Requester should be readily accessible to the Department.

FOIA implementing regulations provide that if some parts of records containing the requested information are exempt from mandatory disclosure, then non-exempt materials shall be disclosed after the exempt material has been deleted. *See* 5 U.S.C. § 552(b). Therefore, if you determine some portion of a record that is responsive to this request is exempt, please provide a copy of the remainder of the record. Additionally, if you determine that some or all of the requested records are exempt from disclosure, please provide a list or index of the records withheld, the exemption invoked, an estimation of the volume of records denied, and the reasons why a discretionary

---

[1] Secretary England, speaking to the BBC on August 5, 2004, said that the status of each detainee had been reviewed eight times before.

Patricia Harris
September 28, 2004
Page 6

release of the records would not be appropriate under DOJ implementing regulations and the agency's FOIA policy. *See* 28 C.F.R. § 16.6(c).

This request has also been sent to the Department of Homeland Security and the Department of Defense. Requesters are willing reimburse up to $5,000 of search and duplication fees incurred, in aggregate, by responding agencies related to this request.

Thank you for your consideration of this request. Please direct all future responses to my attention at:

> Stephen H. Oleskey, Esq.
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, Massachusetts 02109
> Telephone (617) 526-6544
> Facsimile  (617) 526-5000

If you need to reach someone by telephone about this request, you also may contact my associate, Lynne Soutter, at (617) 526-6447.

Sincerely,

Stephen H. Oleskey


Attorney for Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem.

### DECLARATION OF STEPHEN H. OLESKEY
### IN SUPPORT OF REQUEST FOR EXPEDITED PROCESSING

I, Stephen H. Oleskey, declare pursuant to 5 U.S.C. § 552 and 32 C.F.R. §

286.4(d)(3)(iv):

1.  I am Senior Partner at the law firm of Wilmer Cutler Pickering Hale and Dorr
    LLP, 60 State Street, Boston, Massachusetts, 02109. I submit this declaration in
    support of the Freedom of Information Act Request filed today on behalf of
    Requesters, Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber
    Lahmar, Hadj Boudella, and Bensayah Belkacem.

2.  I currently represent Requesters in a *habeas corpus* case filed in federal district
    court, wherein the continued detention of Requesters in Guantanamo Bay Naval
    Base, Cuba ("Guantanamo") is challenged as unlawful and unconstitutional.

3.  The United States Military has denied and continues to deny Requesters'
    substantial due process rights. Requesters' have been detained by the U.S.
    Military in Guantanamo for more than two years without access to a lawyer or
    any legitimate legal process.

4.  Requesters' due process rights continue to be denied by their ongoing detention
    and are additionally threatened by imminent Combatant Status Review Tribunals,
    to which they are subject and for which they are not provided access to counsel.

5.  Requesters' families and the public have not been provided with information
    concerning Requesters' medical health or treatment during their detention *(see
    Bosnian Citizens Imprisoned at Guantanamo Complain About Health Problems,*
    BBC Monitoring International Reports, August 3, 2004).

6.  Former detainees have recounted that Requesters were subject to abusive
    conditions in Guantanamo *(see* Shafia Rasul, Asif Iqbal and Rhuhel Ahmed,
    *Composite Statement: Detention in Afghanistan and Guantanamo Bay, ¶ 300*
    (available at www.ccr-ny.org)), and the media has reported abuses by the
    military's Extreme Reaction Force *(see* AP, *Three Britons allege abuses under
    U.S. custody at Guantanamo,* USA Today.com, August 4, 2004; David Rose and
    Gaby Hinsliff, *US Guards 'Filmed Beatings' at Terror Camp,*
    Observer.Guardian.uk.com, May 16, 2004). These facts indicate that Requesters
    may have been threatened with unlawful punishments amounting to torture.

I hereby declare that the foregoing is true and correct to the best of my knowledge.

Executed at Boston, Massachusetts on September 28, 2004.

Stephen H. Oleskey
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000

| MEDICAL RECORD | AUTHORIZATION FOR DISCLOSURE OF INFORMATION |
|---|---|
| | For use of this form, see AR 40-66; the proponent agency is Office of The Surgeon General. |

This form will not be used for authorization to disclose alcohol or drug abuse patient information from medical records or for authorization to disclose information from records of an alcohol or drug abuse treatment program. For authorization to disclose alcohol or drug abuse patient information, see 42 USC section 290dd, 42 CFR part 2, AR 40-66, and AR 600-85.

(Pursuant to the Privacy Act of 1974, 5 USC section 552a)

| PHYSICIAN OR MEDICAL TREATMENT FACILITY AUTHORIZED TO RELEASE INFORMATION | It is understood that this authorization may be revoked at any time, if requested in writing, except to the extent that action will have already been taken. |
|---|---|
| JTF Guantanamo | |

## PATIENT DATA

| NAME (Last, First, MI) | DATE OF BIRTH (YYYYMMDD) | SOCIAL SECURITY/IDENTIFICATION NUMBER |
|---|---|---|
| Boudella, Hadj | 04/18/65 | |

| PERIOD OF TREATMENT (YYYYMMDD to YYYYMMDD) | TYPE OF TREATMENT |
|---|---|
| ~~January~~ February 2002  TO  PRESENT | ☐ OUTPATIENT  ☐ INPATIENT  ☒ BOTH |

RESTRICTIONS ON INFORMATION (Specify)

NONE - Supply All information

USE OF MEDICAL INFORMATION

☐ FURTHER MEDICAL CARE  ☐ INSURANCE CLAIM(S)  ☒ ATTORNEY  ☐ DISABILITY DETERMINATION
☐ OTHER (Specify)

## INFORMATION DESTINATION

INDIVIDUAL OR ORGANIZATION TO WHOM INFORMATION SHOULD BE RELEASED (Name and Address)

Robert Kirsch, Stephen Oleskey or any attorney at Wilmer Cutler Pickering Hale and Dorr LLP

(ANY DISCLOSURE OF MEDICAL RECORD INFORMATION BY THE RECIPIENT(S) IS PROHIBITED EXCEPT WHEN IMPLICIT IN THE PURPOSES OF THIS DISCLOSURE)

## RELEASE AUTHORIZATION

| I hereby request and authorize the named physician/medical treatment facility to release the medical information described above to the named individual/organization indicated. | DATE (YYYYMMDD) Dec. 15, 2004 |
|---|---|
| SIGNATURE OF PATIENT/PARENT/GUARDIAN | RELATIONSHIP TO PATIENT Patient |

IMPRINT OF PATIENT IDENTIFICATION PLATE WHEN AVAILABLE

**DA FORM 5006, FEB 2003**    DA FORM 5006-R, NOV 1996, IS OBSOLETE.    USAPA V1.00

Translated into Arabic by the Official Certified Court Interpreter Felice Bezri.

| **MEDICAL RECORD** | **AUTHORIZATION FOR DISCLOSURE OF INFORMATION** |
|---|---|
| | For use of this form, see AR 40-66; the proponent agency is Office of The Surgeon General. |

This form will not be used for authorization to disclose alcohol or drug abuse patient information from medical records or for authorization to disclose information from records of an alcohol or drug abuse treatment program. For authorization to disclose alcohol or drug abuse patient information, see 42 USC section 290dd, 42 CFR part 2, AR 40-66, and AR 600-85.

(Pursuant to the Privacy Act of 1974, 5 USC section 552a)

PHYSICIAN OR MEDICAL TREATMENT FACILITY AUTHORIZED TO RELEASE INFORMATION

JTF Guantanamo

It is understood that this authorization may be revoked at any time, if requested in writing, except to the extent that action will have already been taken.

**PATIENT DATA**

NAME *(Last, First, MI)*
~~Bel~~ Bensayah, Belkacem

DATE OF BIRTH *(YYYYMMDD)*
9 | 10 | 62

SOCIAL SECURITY/IDENTIFICATION NUMBER

PERIOD OF TREATMENT *(YYYYMMDD to YYYYMMDD)*
JAN 2002    TO    Present

TYPE OF TREATMENT
☐ OUTPATIENT    ☐ INPATIENT    ☒ BOTH

RESTRICTIONS ON INFORMATION *(Specify)*

None - Supply all information

USE OF MEDICAL INFORMATION
☐ FURTHER MEDICAL CARE    ☐ INSURANCE CLAIM(S)    ☒ ATTORNEY    ☐ DISABILITY DETERMINATION
☐ OTHER *(Specify)*

**INFORMATION DESTINATION**

INDIVIDUAL OR ORGANIZATION TO WHOM INFORMATION SHOULD BE RELEASED *(Name and Address)*

*(ANY DISCLOSURE OF MEDICAL RECORD INFORMATION BY THE RECIPIENT(S) IS PROHIBITED EXCEPT WHEN IMPLICIT IN THE PURPOSES OF THIS DISCLOSURE)*

**RELEASE AUTHORIZATION**

| I hereby request and authorize the named physician/medical treatment facility to release the medical information described above to the named individual/organization indicated. | DATE *(YYYYMMDD)* 12 | 16 | 04 |
|---|---|
| SIGNATURE OF PATIENT/PARENT/GUARDIAN : Belkacem Bensayah | RELATIONSHIP TO PATIENT Patient |

IMPRINT OF PATIENT IDENTIFICATION PLATE WHEN AVAILABLE

**DA FORM 5006, FEB 2003**    DA FORM 5006-R, NOV 1996, IS OBSOLETE.    USAPA V1.00

TRANSLATED INTO ARABIC BY THE OFFICIAL CERTIFIED COURT INTERPRETER

| MEDICAL RECORD | AUTHORIZATION FOR DISCLOSURE OF INFORMATION |
|---|---|
| | For use of this form, see AR 40-66; the proponent agency is Office of The Surgeon General. |

This form will not be used for authorization to disclose alcohol or drug abuse patient information from medical records or for authorization to disclose information from records of an alcohol or drug abuse treatment program. For authorization to disclose alcohol or drug abuse patient information, see 42 USC section 290dd, 42 CFR part 2, AR 40-66, and AR 600-85.

(Pursuant to the Privacy Act of 1974, 5 USC section 552a)

PHYSICIAN OR MEDICAL TREATMENT FACILITY AUTHORIZED TO RELEASE INFORMATION

JTF Guantanamo

It is understood that this authorization may be revoked at any time, if requested in writing, except to the extent that action will have already been taken.

**PATIENT DATA**

NAME (Last, First, MI)
Ait Idir, Mustafa

DATE OF BIRTH (YYYYMMDD)
7/9/70

SOCIAL SECURITY/IDENTIFICATION NUMBER

PERIOD OF TREATMENT (YYYYMMDD to YYYYMMDD)
January 2002 TO Present

TYPE OF TREATMENT
☐ OUTPATIENT   ☐ INPATIENT   ☒ BOTH

RESTRICTIONS ON INFORMATION (Specify)

None Supply all information

USE OF MEDICAL INFORMATION
☐ FURTHER MEDICAL CARE   ☐ INSURANCE CLAIM(S)   ☒ ATTORNEY   ☐ DISABILITY DETERMINATION
☐ OTHER (Specify)

**INFORMATION DESTINATION**

INDIVIDUAL OR ORGANIZATION TO WHOM INFORMATION SHOULD BE RELEASED (Name and Address)

Attorneys of Wilmer Cutler Pickering Hale and Dorr LLP

(ANY DISCLOSURE OF MEDICAL RECORD INFORMATION BY THE RECIPIENT(S) IS PROHIBITED EXCEPT WHEN IMPLICIT IN THE PURPOSES OF THIS DISCLOSURE)

**RELEASE AUTHORIZATION**

I hereby request and authorize the named physician/medical treatment facility to release the medical information described above to the named individual/organization indicated.

DATE (YYYYMMDD)
12/16/04

SIGNATURE OF PATIENT/PARENT/GUARDIAN
x

RELATIONSHIP TO PATIENT
Patient

IMPRINT OF PATIENT IDENTIFICATION PLATE WHEN AVAILABLE

DA FORM 5006, FEB 2003    DA FORM 5006-R, NOV 1996, IS OBSOLETE.    USAPA V1.00

Translated into Arabic by the Official Certified Court Interpreter Felice Bezri.

| MEDICAL RECORD | AUTHORIZATION FOR DISCLOSURE OF INFORMATION |
|---|---|
| | For use of this form, see AR 40-66; the proponent agency is Office of The Surgeon General. |

This form will not be used for authorization to disclose alcohol or drug abuse patient information from medical records or for authorization to disclose information from records of an alcohol or drug abuse treatment program.  For authorization to disclose alcohol or drug abuse patient information, see 42 USC section 290dd, 42 CFR part 2, AR 40-66, and AR 600-85.

(Pursuant to the Privacy Act of 1974, 5 USC section 552a)

PHYSICIAN OR MEDICAL TREATMENT FACILITY AUTHORIZED TO RELEASE INFORMATION

JTF Guantanamo

It is understood that this authorization may be revoked at any time, if requested in writing, except to the extent that action will have already been taken.

## PATIENT DATA

NAME *(Last, First, MI)*

Boumediene, Lakhdar

DATE OF BIRTH *(YYYYMMDD)*

SOCIAL SECURITY/IDENTIFICATION NUMBER

*PERIOD OF TREATMENT  (YYYYMMDD to YYYYMMDD)*
TO

TYPE OF TREATMENT

☐ OUTPATIENT    ☐ INPATIENT    ☐ BOTH

RESTRICTIONS ON INFORMATION  *(Specify)*

USE OF MEDICAL INFORMATION

☐ FURTHER MEDICAL CARE    ☐ INSURANCE CLAIM(S)    ☐ ATTORNEY    ☐ DISABILITY DETERMINATION
☐ OTHER  *(Specify)*

## INFORMATION DESTINATION

INDIVIDUAL OR ORGANIZATION TO WHOM INFORMATION SHOULD BE RELEASED  *(Name and Address)*

*(ANY DISCLOSURE OF MEDICAL RECORD INFORMATION BY THE RECIPIENT(S) IS PROHIBITED EXCEPT WHEN IMPLICIT IN THE PURPOSES OF THIS DISCLOSURE)*

## RELEASE AUTHORIZATION

| I hereby request and authorize the named physician/medical treatment facility to release the medical information described above to the named individual/organization indicated. | DATE *(YYYYMMDD)* 12/14/04 |
|---|---|
| SIGNATURE OF PATIENT/PARENT/GUARDIAN | RELATIONSHIP TO PATIENT |

IMPRINT OF PATIENT IDENTIFICATION PLATE WHEN AVAILABLE

DA FORM 5006, FEB 2003        DA FORM 5006-R, NOV 1996, IS OBSOLETE.        USAPA V1.00

| MEDICAL RECORD | AUTHORIZATION FOR DISCLOSURE OF INFORMATION |
|---|---|
| | For use of this form, see AR 40-66; the proponent agency is Office of The Surgeon General. |

This form will not be used for authorization to disclose alcohol or drug abuse patient information from medical records or for authorization to disclose information from records of an alcohol or drug abuse treatment program. For authorization to disclose alcohol or drug abuse patient information, see 42 USC section 290dd, 42 CFR part 2, AR 40-66, and AR 600-85.

(Pursuant to the Privacy Act of 1974, 5 USC section 552a)

PHYSICIAN OR MEDICAL TREATMENT FACILITY AUTHORIZED TO RELEASE INFORMATION

JTF Guantanamo

It is understood that this authorization may be revoked at any time, if requested in writing, except to the extent that action will have already been taken.

## PATIENT DATA

NAME *(Last, First, MI)*

Lahmar Saber

DATE OF BIRTH *(YYYYMMDD)*

SOCIAL SECURITY/IDENTIFICATION NUMBER

PERIOD OF TREATMENT *(YYYYMMDD to YYYYMMDD)*
TO

TYPE OF TREATMENT

☐ OUTPATIENT    ☐ INPATIENT    ☐ BOTH

RESTRICTIONS ON INFORMATION *(Specify)*

USE OF MEDICAL INFORMATION

☐ FURTHER MEDICAL CARE    ☐ INSURANCE CLAIM(S)    ☐ ATTORNEY    ☐ DISABILITY DETERMINATION
☐ OTHER *(Specify)*

## INFORMATION DESTINATION

INDIVIDUAL OR ORGANIZATION TO WHOM INFORMATION SHOULD BE RELEASED *(Name and Address)*

*(ANY DISCLOSURE OF MEDICAL RECORD INFORMATION BY THE RECIPIENT(S) IS PROHIBITED EXCEPT WHEN IMPLICIT IN THE PURPOSES OF THIS DISCLOSURE)*

## RELEASE AUTHORIZATION

| I hereby request and authorize the named physician/medical treatment facility to release the medical information described above to the named individual/organization indicated. | DATE *(YYYYMMDD)* |
|---|---|
| SIGNATURE OF PATIENT/PARENT/GUARDIAN | RELATIONSHIP TO PATIENT |
| IMPRINT OF PATIENT IDENTIFICATION PLATE WHEN AVAILABLE | |

DA FORM 5006, FEB 2003        DA FORM 5006-R, NOV 1996, IS OBSOLETE.        USAPA V1.00

| MEDICAL RECORD | AUTHORIZATION FOR DISCLOSURE OF INFORMATION |
|---|---|
| | For use of this form, see AR 40-66; the proponent agency is Office of The Surgeon General. |

This form will not be used for authorization to disclose alcohol or drug abuse patient information from medical records or for authorization to disclose information from records of an alcohol or drug abuse treatment program.  For authorization to disclose alcohol or drug abuse patient information, see 42 USC section 290dd, 42 CFR part 2, AR 40-66, and AR 600-85.

(Pursuant to the Privacy Act of 1974, 5 USC section 552a)

**PHYSICIAN OR MEDICAL TREATMENT FACILITY AUTHORIZED TO RELEASE INFORMATION**

JTF Guantanamo

It is understood that this authorization may be revoked at any time, if requested in writing, except to the extent that action will have already been taken.

## PATIENT DATA

| NAME  (Last, First, MI) | DATE OF BIRTH (YYYYMMDD) | SOCIAL SECURITY/IDENTIFICATION NUMBER |
|---|---|---|
| mohamed  Nechla  Nechla mohamed | | |

| PERIOD OF TREATMENT  (YYYYMMDD to YYYYMMDD) TO | TYPE OF TREATMENT  ☐ OUTPATIENT   ☐ INPATIENT   ☐ BOTH |
|---|---|

**RESTRICTIONS ON INFORMATION  (Specify)**

**USE OF MEDICAL INFORMATION**

☐ FURTHER MEDICAL CARE   ☐ INSURANCE CLAIM(S)   ☐ ATTORNEY   ☐ DISABILITY DETERMINATION
☐ OTHER  (Specify)

## INFORMATION DESTINATION

INDIVIDUAL. OR ORGANIZATION TO WHOM INFORMATION SHOULD BE RELEASED  (Name and Address)

(ANY DISCLOSURE OF MEDICAL RECORD INFORMATION BY THE RECIPIENT(S) IS PROHIBITED EXCEPT WHEN IMPLICIT IN THE PURPOSES OF THIS DISCLOSURE)

## RELEASE AUTHORIZATION

| I hereby request and authorize the named physician/medical treatment facility to release the medical information described above to the named individual/organization indicated. | DATE (YYYYMMDD) |
|---|---|
| SIGNATURE OF PATIENT/PARENT/GUARDIAN | RELATIONSHIP TO PATIENT |

IMPRINT OF PATIENT IDENTIFICATION PLATE WHEN AVAILABLE

DA FORM 5006, FEB 2003      DA FORM 5006-R, NOV 1996, IS OBSOLETE.      USAPA  V1.00



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION AND SECURITY REVIEW
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

Ref: 04-F-2832

OCT 0 6 2004

Mr. Stephen H. Oleskey
Wilmer Cutler Pickering and Dorr LLP
60 State Street
Boston, MA 02109

Dear Mr. Oleskey:

This is in response to your September 28, 2004, Freedom of Information Act (FOIA), which was received by this Office on September 29, 2004.

Your request for expedited processing has been approved and assigned the case number referenced above. The actual processing time of your request will depend upon the complexity of the search, whether sensitive records are involved, the volume of records to be searched, the location of the records and the coordination/consultation required to determine release of information.

You will be notified by this office when your request has been completed. Questions regarding this action may be referred to Ms. Mary Wahling, (703) 614-2411 or to Mr. Chris Marye, (703) 614-5456.

Sincerely,

C.Y. Talbott
Chief

**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
**FILE COPY**





*cc: Team*

**DEPARTMENT OF DEFENSE**
UNITED STATES SOUTHERN COMMAND
3511 NW 91ST AVENUE
MIAMI, FL 33172-1217

REPLY TO
ATTENTION OF

November 08, 2004

Directorate of Manpower, Personnel
  and Administration

Ref: SC 05-007

Mr. Stephen H. Oleskey
Wilmer Cutler Pickering and Dorr LLP
60 State Street
Boston, MA 02109

Dear Mr. Oleskey:

    We received from the Office of Freedom of Information and Security Review your Freedom of Information Act request of 28 September 2004; wherein you are requesting information related to six detainees at Guantanamo Bay, Cuba.

    Your request has been assigned case number SC 05-007 We are processing it and will be responding to you in the near future.

                 Sincerely,

                 Jean Carrillo
                 Lieutenant, U.S. Navy
                 Adjutant General

# WILMER CUTLER PICKERING
# HALE AND DORR LLP

March 4, 2005

*Via Federal Express*

Ms. Mary Wahling
Department of Defense
Office of Freedom of Information and Security Review
1155 Defense Pentagon, Rm 2C757
Washington, D.C. 20301-1155

Stephen H. Oleskey

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6544
+1 617 526 5000 fax
stephen.oleskey@wilmerhale.com

Re:    FOIA Request of September 28, 2004, Ref. 04-F-2832

Dear Ms. Wahling:

On September 28, 2004, I submitted to your office a Freedom of Information Act Request ("the Request") on behalf of six men currently detained at Guantanamo Bay Naval Base ("Guantanamo"): Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem ("Requesters"). Requesters sought, and still seek, all records in any way relating to, pertaining to, or mentioning any or all of them and the detention of any or all of them by any and all persons or entitities, including all persons acting on behalf of the United States. Due to the nature of their ongoing detention, Requesters sought, and still seek, expedited processing.

The Department of Defense ("DoD") approved the request for expedited processing on October 6, 2004, in a letter from Chief C.Y. Talbott. See Attachment 1. Chief Talbott also named you as the contact person at the Department of Defense for the Request.

On November 8, 2004, Lt. Jean Carrillo of the DoD, United States Southern Command ("SOUTHCOM") sent me a letter indicating SOUTHCOM had received the Request via the Office of Freedom of Information and Security Review ("OFISR"). See Attachment 2. That letter said that SOUTHCOM was processing the Request and "will be responding to you in the near future."

Neither Chief Talbott nor Lt. Carrillo specified a substantive response date as required by 32 C.F.R. § 286.23, and I have not been contacted by SOUTHCOM or anyone at DoD about the status of the Request. Weeks have passed since we received Lt. Carrillo's letter, and nearly six months have gone by since we submitted the Request. We have received no documents in response to the September 28 request.

On February 17, 2005, my colleague, Lynne Soutter, called you to discuss the status of the Request and to determine the date responsive documents will be produced. Instead you informed her that: (1) SOUTHCOM has not yet provided any documents to OFISR; (2) DoD will not

Ms. Mary Wahling
March 3, 2005
Page 2

produce documents on a rolling basis; and (3) DoD cannot estimate when we might expect to receive responsive documents.

We ask that the DoD immediately produce responsive documents, beginning on a rolling basis. As you know, many, if not most, of the responsive documents can be easily located at Guantanamo, since the Joint Task Force - Guantanamo maintains a master file for each Requester. The entire master file for each of the Requesters, including information about the custody, welfare, and interrogations of the Requester, is responsive to the Request. Moreover, the Request named specific documents known to exist, such as a report by Admiral Church concerning his visit to Guantanamo on or about May 6, 2004, which could also be easily identified and produced.

Due to the unreasonable delay in processing the Request, we therefore write to inform you that we intend to file a suit in Federal District Court to enforce our rights under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, and corresponding regulations.

Sincerely,

Stephen H. Oleskey

cc:    C.Y. Talbott, Chief
       Lt. Jean Carrillo, U.S. Navy, Southern Command

Ms. Mary Wahling
March 3, 2005
Page 3


bcc:    Lynne C. Soutter, Esq.
        Melissa Hoffer, Esq.
        Robert Kirsch, Esq.



**U.S. Department of Justice**

*Washington, D.C. 20530*
**OCT 2 2 2004**

Stephen H. Oleskey, Esq.
Wilmer Cutler Pickering
    Hale and Dorr LLP
60 State Street
Boston, MA   02109

Dear Mr. Oleskey:

Your Freedom of Information Act and/or Privacy Act (FOIA/PA) request was received by this office which serves as the receipt and referral unit for FOIA/PA requests addressed to the Department of Justice (DOJ).   Federal agencies are required to respond to a FOIA request within twenty business days.   This period does not begin until the request is actually received by the component within the DOJ that maintains the records sought.

The Immigration and Naturalization Service was transferred to the Department of Homeland Security on March 1, 2003. The new name is the Bureau of Citizenship and Immigration Services (BCIS). The BCIS can be reached at the address below:

> FOIA/PA
> Bureau of Citizenship and Immigration Services
> 2nd Floor, Ullico Building
> Department of Homeland Security
> 425 I Street, NW
> Washington, DC  20536
> (202) 514-3278

Sincerely,

Ronald L. Deacon, Director
Facilities and Administrative
    Service Staff
Justice Management Division

Enclosure
Returned request

*FOIA*

# WILMER CUTLER PICKERING
## HALE AND DORR LLP

September 28, 2004

Stephen H Oleskey

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6544
+1 617 526 5000 fax
stephen.oleskey@wilmer...

Patricia Harris, Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 114, LOC
Washington, D.C. 20530-0001

Re:    Freedom of Information Act Request

Dear Ms. Harris:

This letter constitutes a request for records pursuant to the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552 *et seq.*, and corresponding regulations. This request is submitted on
behalf of the following individuals (collectively, "Requesters") who are presently detained at
Guantanamo Bay Naval Base, Cuba ("Guantanamo"): Lakhdar Boumediene, Mohammed
Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem.

## I.    Records Sought

Requesters seek all records in any way relating to, pertaining to, or mentioning any or all of them
and the detention of any or all of them by any and all persons or entities, including all persons
acting on behalf of the United States. Without limiting any of the above, Requesters specifically
seek all records concerning the Government's custody and interrogations of them. Requests for
"records concerning Requesters" will include any records in any form, including electronic
media, that in any way concern, relate to, pertain to, refer to, or mention any or all of the
Requesters. Accordingly, Requesters seek the following records:

1) Correspondence and records, including, but not limited to, notes, e-mail, and telephone
   records of communications between the federal government and the government of Bosnia
   and Herzegovina or any person or organization in Bosnia and Herzegovina concerning
   Requesters;

2) Records concerning the transfer of custody of Requesters from Bosnia and Herzegovina to
   the United States in January 2002;

3) Records concerning the transport of Requesters from Bosnia and Herzegovina to
   Guantanamo, including, but not limited to, records of the transport itinerary, duration of the
   flight, and measures taken with respect to physically securing Requesters during transport;

4) Records of communications with, interrogations and interviews of (referred to collectively as
   "interrogations") Requesters while in the custody of Bosnia and Herzegovina, including,
   without limitation:

Patricia Harris
September 28, 2004
Page 2

    a)  Any statements made by Requesters;

    b)  Any transcriptions of the interrogations;

    c)  Any photographs, video, audio, digital or other contemporaneous recordings of the interrogations;

    d)  Records concerning the conditions to which Requesters were subject during the interrogations;

    e)  Records concerning the mental or physical condition of Requesters during or after the interrogations;

    f)  Records containing, or in any way relating or referring to, information provided by or derived from information obtained from Requesters;

5)  Records concerning access to Requesters granted or denied to foreign governments or non-governmental organizations, including, but not limited to, records relating to a visit from representatives of the government of Bosnia and Herzegovina to Guantanamo in or about July 2004;

6)  Records of interrogations of Requesters while in the custody of the United States, including, without limitation:

    a)  Any statements made by Requesters;

    b)  Any transcriptions of the interrogations;

    c)  Any photographs, video, audio, digital or other contemporaneous recordings of the interrogations;

    d)  Any records of the conditions to which Requesters were subjected during the interrogations;

    e)  Records concerning the mental or physical condition of Requesters during or after the interrogations;

    f)  Records concerning any interaction the Joint Intelligence Group at Guantanamo had with Requesters;

    g)  Records containing, or in any way relating or referring to, information provided by or derived from Requesters;

7)  Records concerning Requesters that contain information supplied by military police, the Joint Detention Operations Group, or other persons who monitor detainees in Guantanamo;

Patricia Harris
September 28, 2004
Page 3

8) Records containing information supplied by intelligence officers, interrogators at Guantanamo, or the Joint Intelligence Group concerning Requesters;

9) Records concerning Requesters that contain statements made by other Guantanamo detainees or terrorist suspects;

10) Medical records and information concerning Requesters, including, without limitation:

   a) Records and information concerning the physical condition of Requesters;

   b) Records of any medical conditions experienced by Requesters;

   c) Records of any medical and/or psychiatric treatments provided, requested, or denied while in U.S. custody;

   d) Records of the mental health or psychological conditions of Requesters;

   e) Records concerning the identities of every person who has or did have any responsibility to observe, record, address, cure, modulate, monitor, or in any way reflect upon the physical or mental health conditions of Requesters;

   f) Records concerning any procedures, instructions, orders, or guidance provided to medical personnel with respect to their duties at Guantanamo;

11) Records concerning any physical or psychological conditions to which Requesters were subject while in U.S. custody, including, without limitation:

   a) Records concerning physical or psychological abuses of Requesters;

   b) Records concerning physical or psychological conditions used to elicit cooperation from Requesters, including, but not limited to: use of shackles; solitary confinement; use of psychoactive drugs; modulation of temperature; withholding of food or water; exposure to weather elements; use of straight jackets; use of dogs to intimidate and/or coerce or attack; threatening the well-being of Requesters' families or otherwise intimating that their families would be harmed; cavity searches; forcing Requesters to hold specific body positions for extended periods of time; sleep deprivation; sensory deprivation or sensory overload, *e.g.*, by exposure to very bright lights at night, by exposure to loud music or noise; withholding or damaging the Koran; withholding communications to or from Requesters' families and/or representatives of the government of Bosnia and Herzegovina.

   c) Records concerning physical or psychological conditions used to punish Requesters, including, but not limited to: use of shackles; solitary confinement; use of psychoactive drugs; modulation of temperature; withholding of food or water; exposure to weather elements; use of straight jackets; use of dogs to intimidate and/or coerce or attack;

Patricia Harris
September 28, 2004
Page 4

threatening the well-being of Requesters' families or otherwise intimating that their families would be harmed; cavity searches; forcing Requesters to hold specific body positions for extended periods of time; sleep deprivation; sensory deprivation or sensory overload, *e.g.*, by exposure to very bright lights at night, by exposure to loud music or noise; withholding or damaging the Koran; withholding communications to or from Requesters' families and/or representatives of the government of Bosnia and Herzegovina;

d) Records concerning treatment of Requesters by interrogators, including, but not limited to, any plans, instructions, orders, guidance or procedures governing interrogations, and any records of any person objecting to or refusing to comply with such instructions;

12) Records concerning any contact, communication, or interaction between the International Committee for the Red Cross ("Red Cross"), or any other non-governmental organization, and Requesters, including, but not limited to, records related to decisions to grant or deny the Red Cross access to any Requester;

13) Records concerning any contact, communication or interaction between any military personnel or special forces unit and Requesters, including, without limitation:

a) Records concerning any contact or interaction between the Extreme Reaction Force ("ERF") or the Immediate Response Force ("IRF") in Guantanamo and Requesters;

b) Records concerning any disciplinary action or punishment against Requesters;

14) Records relating to policies, procedures or guidelines governing conditions of detention, methods of interrogation, or treatment of detainees at Guantanamo;

15) Records relating to investigations, inquiries, observations, inspections or disciplinary proceedings initiated in relation to actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 14, above, including, but not limited to, records indicating the existence of such investigations, inquiries, observations, inspections or disciplinary proceedings;

16) Records concerning any investigation of or disciplinary action taken against any guard, military police, intelligence officer, military personnel or civilian in connection with Requesters;

17) Records of any investigations, inquiries, observations, or inspections relating to conditions of detention or interrogations at Guantanamo, including, but not limited to:

a) Records concerning a visit by Admiral Church to Guantanamo on or about May 6, 2004;

b) Records prepared by Admiral Church concerning his visit to Guantanamo on or about May 6, 2004;

Patricia Harris
September 28, 2004
Page 5

> c) Records concerning any observations of detention at Guantanamo by the Red Cross or
> any other non-governmental organization.

## 2.    Requesters Are Entitled to Expedited Processing

Expedited processing of a FOIA request is warranted when it involves "the loss of substantial
due process rights." 28 C.F.R. § 16.5(d)(iii). Here, the denial of Requesters' substantial due
process rights is not only imminent, but also present and on-going. Requesters' have been
detained by the U.S. Military in Guantanamo for more than two years without access to a lawyer
or any legitimate legal process. Requesters' families and the public have not been provided with
information concerning Requesters' medical health or treatment, and, given recent accounts of
abuses of detainees by the military's Extreme Reaction Force, there is reason to believe that
Requesters are threatened with unlawful punishments amounting to torture. *See, e.g.,* Shafia
Rasul, Asif Iqbal and Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and
Guantanamo Bay, ¶ 300 (available at* www.ccr-ny.org) (former detainees describing abusive
conditions at Guantanamo for Algerian-Bosnian detainees); AP, *Three Britons allege abuses
under U.S. custody at Guantanamo,* USA Today.com, August 4, 2004; David Rose and Gaby
Hinsliff, *US Guards 'Filmed Beatings' at Terror Camp,* Observer.Guardian.uk.com, May 16,
2004; *Bosnian Citizens Imprisoned at Guantanamo Complain About Health Problems,* BBC
Monitoring International Reports, August 3, 2004; Department of Justice, *Working Group Report
on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical,
Policy and Operational Considerations*, March 6, 2003 (rationalizing that compliance with
international treaties and U.S. laws prohibiting torture could be overlooked because of legal
technicalities and national security needs).

*    *    *    *

It is our understanding that much of the requested information is maintained together in a manner
readily accessible to the Department, because Secretary Gordon England has stated that the
Department repeatedly reviews the files of each Guantanamo detainee in order to justify their
continued detention and because the Department has an on-going obligation to monitor the
health of persons held in U.S. custody.[1] For these reasons, both the health and interrogation
records concerning each Requester should be readily accessible to the Department.

FOIA implementing regulations provide that if some parts of records containing the requested
information are exempt from mandatory disclosure, then non-exempt materials shall be disclosed
after the exempt material has been deleted. *See* 5 U.S.C. § 552(b). Therefore, if you determine
some portion of a record that is responsive to this request is exempt, please provide a copy of the
remainder of the record. Additionally, if you determine that some or all of the requested records
are exempt from disclosure, please provide a list or index of the records withheld, the exemption
invoked, an estimation of the volume of records denied, and the reasons why a discretionary

---

[1] Secretary England, speaking to the BBC on August 5, 2004, said that the status of each detainee had been reviewed
eight times before.

Patricia Harris
September 28, 2004
Page 6

release of the records would not be appropriate under DOJ implementing regulations and the agency's FOIA policy. *See* 28 C.F.R. § 16.6(c).

This request has also been sent to the Department of Homeland Security and the Department of Defense. Requesters are willing reimburse up to $5,000 of search and duplication fees incurred in aggregate, by responding agencies related to this request.

Thank you for your consideration of this request.  Please direct all future responses to my attention at:

> Stephen H. Oleskey, Esq.
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, Massachusetts 02109
> Telephone (617) 526-6544
> Facsimile  (617) 526-5000

If you need to reach someone by telephone about this request, you also may contact my associate, Lynne Soutter, at (617) 526-6447.

Sincerely,

Stephen H. Oleskey

Attorney for Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber Lahmar, Hadj Boudella, and Bensayah Belkacem.

## DECLARATION OF STEPHEN H. OLESKEY
## IN SUPPORT OF REQUEST FOR EXPEDITED PROCESSING

I, Stephen H. Oleskey, declare pursuant to 5 U.S.C. § 552 and 32 C.F.R. §

286.4(d)(3)(iv):

1.    I am Senior Partner at the law firm of Wilmer Cutler Pickering Hale and Dorr
      LLP, 60 State Street, Boston, Massachusetts, 02109. I submit this declaration in
      support of the Freedom of Information Act Request filed today on behalf of
      Requesters, Lakhdar Boumediene, Mohammed Nechle, Mustafa Ait Idir, Saber
      Lahmar, Hadj Boudella, and Bensayah Belkacem.

2.    I currently represent Requesters in a *habeas corpus* case filed in federal district
      court, wherein the continued detention of Requesters in Guantanamo Bay Naval
      Base, Cuba ("Guantanamo") is challenged as unlawful and unconstitutional.

3.    The United States Military has denied and continues to deny Requesters'
      substantial due process rights. Requesters' have been detained by the U.S.
      Military in Guantanamo for more than two years without access to a lawyer or
      any legitimate legal process.

4.    Requesters' due process rights continue to be denied by their ongoing detention
      and are additionally threatened by imminent Combatant Status Review Tribunals,
      to which they are subject and for which they are not provided access to counsel.

5.    Requesters' families and the public have not been provided with information
      concerning Requesters' medical health or treatment during their detention (*see
      Bosnian Citizens Imprisoned at Guantanamo Complain About Health Problems,*
      BBC Monitoring International Reports, August 3, 2004).

6.    Former detainees have recounted that Requesters were subject to abusive
      conditions in Guantanamo (*see* Shafia Rasul, Asif Iqbal and Rhuhel Ahmed,
      *Composite Statement: Detention in Afghanistan and Guantanamo Bay,* ¶ 300
      (*available at* www.ccr-ny.org)), and the media has reported abuses by the
      military's Extreme Reaction Force (*see* AP, *Three Britons allege abuses under
      U.S. custody at Guantanamo,* USA Today.com, August 4, 2004; David Rose and
      Gaby Hinsliff, *US Guards 'Filmed Beatings' at Terror Camp,*
      Observer.Guardian.uk.com, May 16, 2004). These facts indicate that Requesters
      may have been threatened with unlawful punishments amounting to torture.

I hereby declare that the foregoing is true and correct to the best of my knowledge.

Executed at Boston, Massachusetts on September 28, 2004.

Stephen H. Oleskey
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000