# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHEN H. OLESKEY,<br><br>ON BEHALF OF GUANTANAMO DETAINEES<br>LAKHDAR BOUMEDIENE;<br>MOHAMED NECHLA; MUSTAFA AIT IDIR;<br>SABER LAHMER; HADJ BOUDELLA;<br>BELKACEM BENSAYEH,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE and UNITED STATES<br>DEPARTMENT OF JUSTICE,<br><br>      Defendants | Civil Action No. 05-10735 RGS |

## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM

Pursuant to this Court's instructions at the Scheduling Conference of July 28, 2005, and the Electronic Order of the same date, defendants United States Department of Defense and United States Department of Justice hereby respond to Plaintiff's Supplemental Memorandum in Support of Plaintiffs' Proposed FOIA Document Production Schedule for Request Nos. 10(f), 14, 15, and 17 ("Plaintiff's Supplemental Response"). In his Supplemental Response, plaintiff asserts that his requests nos. 10(f), 14, 15, and 17 "are more narrowly tailored" than related FOIA requests made by the American Civil Liberties Union ("ACLU") in American Civil Liberties Union, et al. v. Department of Defense, et al., No. 04-CV-4151 (AHK), and that, on this basis, the court should order defendants to produce all responsive, non-exempt records by September 28, 2005.

This Court should deny plaintiff's request. Each of the requests identified by plaintiff -- requests nos. 10(f), 14, 15, and 17 -- is covered by the FOIA request and production schedule at issue in the ACLU litigation. Indeed, plaintiff largely concedes as much, arguing that the Department of Defense should be required to produce all responsive records by September 28, 2005, because his FOIA requests "are more narrowly tailored" than the requests in the ACLU litigation. This Court should reject plaintiff's transparent effort to relitigate matters which have already been decided.

**1.** Plaintiff's Supplemental Response fails to comply with this Court's instructions at the Scheduling Conference of July 28, 2005 and the Electronic Order entered the same date. During that hearing, plaintiff argued that defendants should be ordered to produce all documents responsive to plaintiff's request for non-detainee specific information by September 28, 2005. Defendants opposed plaintiff's request based, in part, on the fact that those request already are the subject of an ambitious production order entered by Judge Alvin K. Hellerstein in the ACLU litigation in the Southern District of New York. After hearing argument from both sides, this Court agreed that defendants should not be ordered to produce documents responsive to plaintiff's request for non-detainee specific information by September 28, 2005, but allowed plaintiff the opportunity to identify any non-detainee specific requests that are not covered in the ACLU litigation. Specifically, in its Electronic Order of July 28, 2005, this Court ordered as follows:

> The Court informs counsel that it would like to see the Order that is in place by Judge Alvin Hellerstein of the Southern District of New York, and the Govt. will provide a copy of that Order to the Court. The plaintiffs will, within the next 7 days, <u>identify anything that is not covered by that Order issued by Judge Hellerstein which needs to be supplemented</u>, and the Govt. will then have 7 days thereafter to respond. This Court, if it deems appropriate, will then issue an Order if necessary. The Govt. will produce pltfs' specific records to pltfs' counsel by September 28, 2005.

Electronic Order, <u>Oleskey</u> v. <u>Department of Defense</u>, No. 05-10735 (July 28, 2005) (emphasis added).

Plaintiff's Supplemental Response, on its face, does not comply with this Court's instructions and Electronic Order. With the exception of request 10(f), plaintiff argues in his Supplemental Response that defendants should be compelled to produce documents in response to his other non-detainee specific requests -- Nos. 14, 15, and 17 -- because those requests "are more narrowly tailored" than the requests in the ACLU litigation, rather than because those requests are "not covered" in the ACLU litigation. The two, of course, are not the same. Indeed, to argue that plaintiff's requests are "more narrowly tailored" than the requests in the ACLU litigation is to necessarily concede that those request are, in fact, covered by the requests in the ACLU litigation. Plaintiff's Supplemental Response, therefore, is nothing more than a transparent effort to reargue matters which this Court has already decided, and his request that defendants be compelled to produce documents in response to request Nos. 14, 15, and 17 by September 28, 2005, should be denied on that basis alone.

**2.** Even were the Court inclined to revisit this issue, it should nonetheless deny plaintiff's request. Judge Hellerstein has ordered an extremely ambitious production schedule in the ACLU litigation, ordering that the Department of Defense process several thousand of pages of responsive documents every fifteen days, with service of the documents to be released to occur on the 15th and last days of every month. Judge Hellerstein notably did not set a date upon which all responsive documents must be processed, however, recognizing the enormous volume of potentially responsive material that is implicated by the ACLU's FOIA request. Similarly here, although plaintiff asserts that his requests Nos. 14, 15, and 17 "are more narrowly tailored" than those at issue in the ACLU

litigation, they nonetheless involve a potentially enormous number of documents that must be processed, including making the determination whether the documents are subject to withholding, in whole or in part, under the various FOIA statutory exceptions. That process cannot be completed by September 28, 2005. Indeed, were any such order to be entered in this case, defendants would likely be forced to seek a stay under <u>Open America</u> v. <u>Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1975).

Plaintiff insists, however, that he would be "substantially prejudiced" by the indefinite delay if this Court adheres to its ruling of July 28, 2005, arguing that "it is highly likely that Plaintiff would not receive any records responsive to those requests until long after the briefing schedule proposed by the parties and adopted by this Court in this matter with respect to Plaintiff's remaining requests. Plaintiff would, therefore, be forced to litigate in separate proceedings any challenges to the agencies' claimed justifications for withholding requested documents." Supplemental Response at 7. That assertion of prejudice is wholly without merit. It is hardly unusual for courts to bifurcate proceedings in FOIA suits. <u>See</u>, <u>e.g.</u>, <u>Billington</u> v. <u>U.S. Dept. of Justice</u>, 249 F. Supp.2d 79, 84 (D.D.C. 2003) ("This Court bifurcated the litigation into two phases, the first of which primarily addressed 'referral agency' documents requested by plaintiff, and the second of which primarily considered the documents in four FBI 'Internal Security Files.'"). Plaintiff therefore has identified no prejudice that will result if this Court were to adhere to its ruling of July 28, 2005.

**3.** Plaintiff also is incorrect that his request No. 10(f) is not covered by the ACLU litigation. The parties in the ACLU litigation have entered into an agreement entitled "Revised Scope of DoD Searches and Processing," a copy of which is attached hereto, which provides, in pertinent part, that the scope of the ACLU request as to the Department of Defense includes:

  5. Documents reflecting policies of DoD or any of its components relating to the treatment of detainees since September 11, 2001 at DoD military bases or DoD detention facilities.  This is limited to documents which:

  a) set forth, contain or refer to policies, guidelines and procedures relating to physical or mental abuse or mistreatment of such detainees; or

  b) set forth, contain or refer to the techniques authorized and prohibited in the course of detention, punishment and/or interrogation of such detainees; or

  c) set forth, contain or refer to <u>policies, guidelines and procedures relating to the role of medical personnel in the interrogation of such detainees, including assessments of such detainees.</u>

This request fairly encompasses the materials that are requested in plaintiff's Request No. 10(f).

Consequently, no adjustment of the current schedule is warranted with respect to request No. 10(f).

           Respectfully submitted,

           MICHAEL J. SULLIVAN
           United States Attorney

         By:  /s/ Mark T. Quinlivan
           MARK T. QUINLIVAN
           Assistant U.S. Attorney
           John Joseph Moakley U.S. Courthouse
           One Courthouse Way, Suite 9200
           Boston, MA 02210
           617-748-3606

Dated: August 12, 2005

# ATTACHMENT

ACLU v. DoD, et al.
Revised Scope of DoD Searches and Processing

1. Documents containing information concerning or derived from investigations or inquiries conducted by any official, officer, or employee of the Department of Defense ("DoD") or one of DoD's components into allegations of physical or mental abuse or mistreatment of detainees since September 11, 2001.

2. Documents containing information concerning disciplinary or judicial proceedings conducted within DoD, or any of DoD's components, which arise from or relate to allegations of physical or mental abuse or mistreatment of detainees since September 11, 2001.

3. Documents generated on the basis of allegations of physical or mental abuse or mistreatment of detainees at military bases or detention facilities since September 11, 2001, including but not limited to documents that reference, report, summarize or evaluate such allegations.

4. Documents relating to deaths of detainees at DoD military bases or DoD detention facilities since September 11, 2001, including autopsy reports, death certificates, reports of investigations and inquiries, and disciplinary and judicial proceedings.

5. Documents reflecting policies of DoD or any of its components relating to the treatment of detainees since September 11, 2001 at DoD military bases or DoD detention facilities. This is limited to documents which:

> a) set forth, contain or refer to policies, guidelines and procedures relating to physical or mental abuse or mistreatment of such detainees; or
>
> b) set forth, contain or refer to the techniques authorized and prohibited in the course of detention, punishment and/or interrogation of such detainees; or
>
> c) set forth, contain or refer to policies, guidelines and procedures relating to the role of medical personnel in the interrogation of such detainees, including assessments of such detainees.

The term detainees shall be limited to detainees held by the United States in Iraq, Afghanistan, Guantanamo or other overseas locations in connection with the Iraq or Afghanistan conflicts or the "war on terrorism."

Plaintiffs have limited their request to exclude publicly available documents. The term publicly available documents means news articles, press releases and any and all documents that are readily accessible to members of the public through DoD public websites.