UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHEN H. OLESKEY,<br><br>ON BEHALF OF GUANTANAMO DETAINEES<br>LAKHDAR BOUMEDIENE;<br>MOHAMED NECHLA; MUSTAFA AIT IDIR;<br>SABER LAHMER; HADJ BOUDELLA;<br>BELKACEM BENSAYEH,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE and UNITED STATES<br>DEPARTMENT OF JUSTICE,<br><br>      Defendants | Civil Action No. 05-10735 RGS |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S RULE 56(f) MOTION TO DENY OR, IN THE ALTERNATIVE,
CONTINUE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The United States Department of Defense ("DoD") conducted a massive and virtually unprecedented search in response to plaintiff's FOIA request, devoting well more than 10,000 man hours in searching for responsive records, identifying over 10,000 pages of responsive records, and producing declarations and Vaughn indexes from multiple DoD components and agencies to whom responsive records had been referred. Those declarations established that DoD engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested," Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990), thereby entitling DoD to summary judgment regarding the adequacy of its search.

In response, plaintiff contends that summary judgment is inappropriate and that discovery is needed because (1) the procedures for keeping and search records at the United States Naval Base, Guantanamo Bay, Cuba ("GTMO") have allegedly undergone constant and dramatic changes making them inconsistent and unreliable (Pl. Mem. at 5-9); (2) several of the DoD components used a "one-size-fits-all" approach by searching only electronic databases (Pl. Mem. at 9-11)); and (3) "overlooked" categories of documents suggest the inadequacy of the searches and the need for discovery (Pl. Mem. at 12-21). As we now show, none of these contentions have merit, nor has plaintiff come close to showing, as he must, that "the agency's search was not made in good faith." Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993).

**1.** Plaintiff's primary contention is that summary judgment is inappropriate and discovery necessary with respect to GTMO because, in contrast to other DoD components, the procedures for producing and maintaining records at GTMO are "inconsistent and unreliable" and characterized by "chaos." But plaintiff makes no attempt to rebut DoD's showing that the search conducted by the U.S. Southern Command ("SOUTHCOM") and the Joint Task Force–Guantanamo, Guantanamo Bay, Cuba ("JTF-GTMO"), a subordinate command to SOUTHCOM, as described in the Declaration of Captain Peter A. Husta ("Husta Decl."), the Chief of Staff at JTF-GTMO at the time of his declaration in July 2006, was inadequate. Instead, plaintiff merely cites (Pl. Mem. at 5-9) to a hodgepodge of books and newspaper articles to suggest that any search conducted at GTMO is *per se* inadequate. That argument bespeaks a fundamental misunderstanding of the standards by which the adequacy of an agency's search for responsive records under the FOIA is evaluated.

As set forth in DoD's memorandum in support of its motion for summary judgment regarding the adequacy of the search, "[i]n order to establish the adequacy of its search, the agency may rely

upon affidavits provided they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith," so long as the affidavit describes in reasonable detail the scope and method by which the search was conducted, and additionally "'describe at least generally the structure of the agency's file system which makes further search difficult.'" Maynard, 986 F.2d at 559 (quoting Church of Scientology of Cal. v. I.R.S., 792 F.2d 146, 151 (D.C. Cir. 1986) (Scalia, J.)). The declaration submitted by Captain Husta easily satisfied this standard. That declaration establishes that from November 2004 to September 2005, JTF-GTMO conducted a search of records maintained by the Joint Detention Group ("JDG"), the Joint Intelligence Group ("JIG"), the Joint Medical Group ("JMG"), and Detainee Operations ("J3"), the JTF-GTMO components determined likely to maintain information responsive to plaintiff's FOIA request. See Husta Decl. ¶¶ 4-11. The specific searches conducted by each of those components, including the databases and indexes searched, are described individually and in detail. Id. ¶¶ 7-11. Tellingly, although plaintiff makes a number of across-the-board assertions that any search conducted at GTMO must be inadequate due to policy and staffing changes, he makes no attempt whatsoever to show that the searches outlined in Captain Husta's declaration were not conducted in good faith, were inadequate, or were not designed to uncover responsive records.

The only specific complaint which plaintiff makes (Pl. Mem. at 9) in contending that any search at GTMO is *per se* inadequate is that manifest records were not maintained by the U.S. Transportation Command because those records are held for only 90 days, and that information collected during the six detainees' Combatant Status Review Tribunals were not retained. It is well-established, however, that "'[t]he fact that a document once existed does not mean that it now exists;

nor does the fact that an agency created a document necessarily imply that the agency has retained it." Maynard, 986 F.2d at 564 (quoting Miller, 779 F.2d at 1385).

For these reasons, plaintiff's assertion that any search conducted at GTMO is *per se* inadequate should be summarily rejected.

**2.** Plaintiff also complains (Pl. Mem. at 9) that many DoD components restricted their searches to electronic databases despite the fact that, assertedly, there were no centralized procedures in place at GTMO to create or maintain records in centralized electronic databases at least during the initial years of the six detainees' confinement. That complaint also is misplaced. Captain Husta's declaration establishes that all information regarding detainees, if in the possession and control of the JIG and JDG, reside in their respect databases. See Husta Decl. ¶ 7 ("All information regarding a particular detainee, if in the possession and control of the JIG, resides in [Joint Detention Information Management System ("JDIMS")] database); id. ¶ 9 ("Any information concerning detention operations as to a particular detainee is maintained in the [Detention Information Management System ("DIMS") database]"). A search of those respective databases therefore was appropriate and adequate. See, e.g., Church of Scientology Int'l v. U.S. Dept. of Justice, 30 F.3d 224, 230 (1st Cir. 1994) (finding agency's search of U.S. Attorney's Office computerized record system to be adequate); Maynard, 986 F.2d at 562 (concluding that Treasury Department properly limited its search to its automated Treasury Enforcement Communications System).

Plaintiff also contends (Pl. Mem. at 10-11) that the fact that Detainee Operations ("J3") did not locate any responsive documents suggests that its search was inadequate. As set forth in Captain Husta's declaration, however, J3 files are maintained in an Excel spreadsheet and in folders maintained on computer hard drives, J3 personnel conducted a thorough review of its files and databases for "[r]ecords concerning the transport of Requesters from Bosnia and Herzegovina to

GTMO, including, but not limited to, records of the transport itinerary, duration of the flight, and measures taken with respect to physically securing Requestors during transport," and the search did not identify and records pertaining to the six detainees that were responsive to plaintiff's FOIA request. See Husta Decl. ¶ 11. Plaintiff's incredulity that such records were not found does not render DoD's search inadequate. See Nation Magazine v. United States, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (holding that "the failure to turn up [a specified] document does not alone render the search inadequate; there is no requirement that an agency produce *all* responsive documents.") (emphasis in original)

**3.** Plaintiff devotes the bulk of his memorandum (Pl. Mem. at 12-21) to highlighting documents which were not found by DoD in its searches but which plaintiff believes to exist. Once again, plaintiff misunderstands the standards governing this question. The fundamental question in FOIA cases is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. U.S. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). As Second and D.C. Circuits have explained, "the factual question * * * is whether the search was reasonably calculated to discover the requested documents, not whether it actually undercovered every document extant," Grand Central Partnership v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999), and "a search is not unreasonable simply because it fails to produce all relevant material; no search of this [large] size * * * will be free from error." Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986); see also Hornbostel v. U.S. Dept of the Interior, 305 F. Supp.2d 21, 28 (D.D.C. 2003) ("[T]he focus of the adequacy inquiry is not on the results"); Judicial

Watch v. Rossotti, 285 F. Supp.2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured.").

    Several of plaintiff's specific complaints underscore this point. Plaintiff notes (Pl. Mem. at 13-14) that DoD initially failed to identify any medical records belonging to the six detainees, and only began to identify and produce such records after plaintiff specifically noted their absence. But far from suggesting the inadequacy of DoD's searches, the fact that the agency looked for and discovered responsive records is evidence of DoD's good faith efforts. See Maynard, 986 F.2d at 565 ("Rather than bad faith, we think that the forthright disclosure by the INS that it had located the misplaced file suggests good faith on the part of the agency."); Meeropol, 790 F.2d at 953 (rejecting argument that later-produced records call the adequacy of a search into question because "[i]t would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file.") (emphasis in original); Landmark Legal Found. v. EPA, 272 F. Supp.2d 59, 63 (D.D.C. 2003) ("[T]he continuing discovery and release of documents does not provide that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to search for responsive documents.").

    Plaintiff also contends (Pl. Mem. at 14) that "[t]he government has completely excluded from its production a category of documents central to Plaintiff's ability to oppose the government's Motion–the standard operating procedure manuals for Guantanamo ("SOPs")." That contention is doubly misplaced. First, SOPs regarding "the procedure for producing and maintaining records" at JTF-GTMO are *not* responsive to Request 14, which seeks "[r]ecords relating to policies, procedures or guidelines governing conditions of detention, methods of interrogation, or treatment of detainees at Guantanamo." That request, on its face, does not encompass procedures and

guidelines for producing and maintaining records generally, it asks for policies, procedures or guidelines governing three defined categories – "conditions of detention, methods of interrogation, or treatment of detainees at Guantanamo." Plaintiff cannot constructively amend his request at this late date, nor can he fault DoD for not producing records which he never asked for. See Kowalczyk v. Dept. of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996) ("A reasonable effort to satisfy [a] request does not entail an obligation to search anew based upon a subsequent clarification.").

Second, contrary to plaintiff's assertion (Pl. Mem. at 14) that DoD "neither identified nor produced a single copy of any SOP for Guantanamo, DoD in fact produced medical SOPs for JTF GTMO responsive to plaintiff's Request No. 10(f), which asked for "[r]ecords regarding any procedures, instructions, orders, or guidance provided to medical personnel with respect to their duties at Guantanamo. Specifically, on October 7, 2005, DoD produced SOPs identified at Bates ranges 4984-5387, and, on January 6, 2006, DoD produced SOPs identified at Bates ranges 5388-5454. DoD also produced a Vaughn index, dated June 22, 2006, for these medical SOPs. In sum, plaintiff's complaints regarding the absence of SOPs in the government's production is wholly misplaced.

Plaintiff's speculation (Pl. Mem. at 15-22) that other records exist but were not found also does not undermine DoD's showing that it conducted a reasonable, good faith search for records. See Miller, 779 F.2d at 1385 (agency is "not required by the Act to account for documents which the requester has in some way identified if it has made a diligent search for those documents in places in which they might be expected to be found."); Servicemembers Legal Defense Network v. Dep't of Defense, 471 F. Supp.2d 78, 85 (D.D.C. 2007) ("[S]peculation that documents may exist

is not relevant to the inquiry. * * * [A plaintiff's belief that other documents may exist does not make the search inadequate.").

\* \* \*

The searches conducted by DoD were conducted in good faith and were "'reasonably calculated to discover the requested documents.'" Maynard, 986 F.2d at 559 (quoting Safecard Servs., 926 F.2d at 1201). For that reason, and because plaintiff has not, and cannot, show that"the agency's search was not made in good faith," Maynard, 986 F.2d at 560, DoD is entitled to summary judgment regarding the adequacy of its search, and plaintiff's Rule 56(f) motion for discovery and for a continuance should be denied.

                                                  Respectfully submitted,

                                                  MICHAEL J. SULLIVAN
                                                  United States Attorney

                                       By:  /s/ Mark T. Quinlivan
                                                  MARK T. QUINLIVAN
                                                  Assistant U.S. Attorney
                                                  Appeals Unit
                                                  John Joseph Moakley U.S. Courthouse
                                                  1 Courthouse Way, Suite 9200
                                                  Boston, MA 02210
                                                  (617) 748-3606

Dated: August 12, 2008

CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                   /s/ Mark T. Quinlivan
                                                  MARK T. QUINLIVAN

May 22, 2008