**ORAL ARGUMENT REQUESTED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHEN H. OLESKEY,<br><br>ON BEHALF OF GUANTANAMO INTERNEES LAKHDAR BOUMEDIENE, MOHAMED NECHLA, MUSTAFA AIT IDIR, SABER LAHMAR, HADJ BOUDELLA, AND BELKACEM BENSAYAH,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE AND UNITED STATES DEPARTMENT OF JUSTICE,<br><br>          Defendants. | Civil Action No. 05 10735 RGS<br><br>**Leave to file granted on**<br>**August 28, 2008** |

**REPLY TO OPPOSITION TO PLAINTIFF'S RULE 56(f) MOTION TO DENY OR, IN THE ALTERNATIVE, CONTINUE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Stephen H. Oleskey ("Plaintiff"), on behalf of Lakhdar Boumediene, Mohamed Nechla, Mustafa Ait Idir, Saber Lahmar, Belkacem Bensayah and Hadj Boudella ("Requesters"), hereby replies to the United States Department of Defense ("DoD") and Unites States Department of Justice's ("DoJ") (collectively, "the Government" or "Defendants") Opposition to Plaintiff's Rule 56(f) Motion to Deny or, in the Alternative, Continue Defendants' Motion for Summary Judgment ("Opposition"). The Opposition incorrectly contends that in order to obtain relief under Motion 56(f), Plaintiff must show that an agency's search was not made in good faith. Instead, in the Freedom of Information ("FOIA") context, if a plaintiff does not have access to

facts regarding the adequacy of the government's search, the government's motion for summary judgment should be denied or discovery should be granted.  Plaintiff's Memorandum of Law in Support of its Rule 56(f) Motion to Deny or, in the Alternative, Continue Defendants' Motion for Summary Judgment ("Memorandum of Law") demonstrates that given the unique circumstances of Guantanamo, materials presented to Plaintiff to date (*e.g.*, Vaughn affidavits) do not present the facts necessary to assess the adequacy of its searches.  Accordingly, the Court should deny summary judgment or, in the alterative, continue Defendants' Motion for Summary Judgment in order to permit discovery.

1.     The Government's Opposition misrepresents Plaintiff's argument.  Plaintiff's Memorandum of Law does not contend that that any search at Guantanamo is "*per se* inadequate."  Instead, keeping in mind that the inquiry into the adequacy of a FOIA search is fact-intensive and depends upon the context of each individual case, <u>Maynard v. Central Intelligence Agency</u>, 986 F.2d 547, 559 (1st Cir. 1993), it merely suggests that the circumstances at Guantanamo make it such that the searches conducted in the case at hand appear to have been unreasonable and – at a minimum – Plaintiff does not have the facts necessary to make a thorough assessment as to their adequacy.

The affidavits do not provide Plaintiff with a sufficient basis to assess the adequacy of the Government's searches.  In a typical FOIA action, the government utilizes standard and well-tested protocol designed to respond to FOIA requests competently and thoroughly.  Under such standard circumstances, affidavits might be sufficient to demonstrate the adequacy of an agency's FOIA search.  However, as discussed in detail in Plaintiff's Memorandum of Law, the manner and speed with which the Guantanamo prisons were set up, the absence of any history or systems of prisoner records that might have served as a foundation, and the unusual way the

prison mission was managed, clearly distinguish Guantanamo and searches that take place within

its bounds from those that might take place at the run-of-the-mill government agency.  Mem. of

Law at 5 to 9.  The affidavits provided in the case at hand do not address the many questions

raised by Guantanamo's unique factual circumstances.  The Government's affidavits do not

provide Plaintiff with a sufficient basis for assessing the adequacy of its searches.

The Opposition incorrectly contends that the "only specific complaint[s] which plaintiff

makes in contending that any search at GTMO is *per se* inadequate" were that "manifest records

were not maintained by the U.S. transportation Command because those records are held for only

90 days, and that information collected during the six detainees' Combatant Status Review

Tribunal were not maintained."  Opp'n at 3.  Plaintiff reiterates that he does not contend that all

searches at Guantanamo are "*per se* inadequate."  Furthermore, despite the Government's

contention, the Memorandum of Law makes numerous other complaints, which – especially

when viewed collectively – suggest that searches at Guantanamo might be inadequate.  Mem. of

Law at 5 to 9.  The two specific complaints to which the Government refers are just two

examples of the Government's *own admissions* that it failed to adequately maintain the

appropriate records.

2.  The Government's Opposition attempts to counter Plaintiff's complaint regarding the

Government's reliance on electronic searches by citing back to the Husta declaration, which

states that electronic databases hold "all information in control of" the Joint Intelligence Group

("JIG") and Joint Defense Group ("JDG").  Opp'n at 4.  Such a broad statement, however, does

not provide the facts necessary for Plaintiff to determine whether the Government was justified

in relying on these electronic databases under the unique circumstances at Guantanamo.  For

instance, as noted in Plaintiff's Memorandum of Law, the Detainee Information Management

System ("DIMS"), used by the JDG to maintain all electronic information on detainee operations regarding detainees, was not put into place until 2003 – a full year after Requesters arrived at Guantanamo. Mem. of Law at 10. This factual scenario raises the question: Does DIMS contain information on Requesters generated prior to implementation of that database? This question of material fact and others raised by the Government's reliance on electronic databases are to be explored by Plaintiff during discovery.

3. Plaintiff agrees that the fundamental question in FOIA cases is "whether the search of documents was adequate." The numerous positive indications of entire categories of documents overlooked by the Government, which are laid out in detail in the Memorandum of Law at 12 to 23, indicate that its search was inadequate and raise questions of material fact as to the sufficiency of its search to be explored in discovery. *See* Kyle v. U.S. Dep't of Health and Human Serv., 1989 U.S. Dist. LEXIS 14635 at *8 (D. Mass. Nov. 16, 1989) (noting that "positive indications of overlooked material cause substantial doubts about the caliber of the agency's search"); Giza v. Sec'y of Health, Educ. and Welfare, 628 F.2d 748, 751 (1st Cir. 1980) (finding discovery appropriate for "determining whether complete disclosure has been made, for example, whether a thorough search for documents has taken place….").

The Government's Opposition attempts to downplay the significance of overlooked documents by noting that it does not need to produce each and every responsive document in order to fulfill its production obligation to Requesters. However, Plaintiff is not alleging that the Government missed one or even a few documents at Guantanamo, but rather that the Government missed broad and directly-responsive *categories* of overlooked documents. In contrast to a single missed document, the identification of broad categories of overlooked

documents casts serious doubt over whether the search was sufficiently "diligent." <u>Miller v.</u>
<u>United States</u>, 779 F.2d 1378, 1385 (8th Cir. 1985).

The Government also contends that one category of entirely overlooked documents –
Camp Delta Standard Operating Procedures manuals ("Camp Delta SOPs") – should not have
been produced to Requesters because SOPs regarding "the procedure for producing and
maintaining records" at Guantanamo Bay are not responsive to Requesters' FOIA Requests and
Request 14, in particular, which seeks "[r]ecords relating to policies and procedures or guidelines
governing conditions of detention, methods of interrogation, or treatment of detainees at
Guantanamo." Opp'n at 6. The Government reasons that Request 14 "does not encompass
guidelines for producing and maintaining records generally, it asks for policies, procedures or
guidelines governing" conditions of detention, methods of interrogation or treatment of detainees
and Guantanamo. <u>Id.</u>

Contrary to the Government's assertion, guidelines for producing and maintaining
records generally at Guantanamo would, indeed, be responsive to Request 14. However, that
question is not determinative in the case at hand. The Camp Delta SOPs are brimming with
policies, procedures and guidelines directly relating to conditions of detention, methods of
interrogation, or treatment of detainees at Guantanamo and, thus, they fall squarely under
Request 14. *See e.g.,* Chapter 6, "Cell Block Operations"; Chapter 4-20, "Behavior Management
Plan…The purpose of the Behavior Management Plan is to enhance and exploit the
disorientation and disorganization felt by a newly arrived detainee in the interrogation process";
and Chapter 8, "Detainee Behavioral Management." Furthermore, the Government searched for,
located and produced the Camp Delta SOPs to the American Civil Liberties Union ("ACLU") in
response to its FOIA requests (*see* Bates Nos. DOD59173-DOD59410, available at

http://www.aclu.org/pdfs/safefree/campdelta_sop_dod059173.pdf (last visited Aug. 17, 2008)),

notwithstanding the fact that the ACLU – like Requesters – did not specifically request

"guidelines for producing and maintaining records generally."

*     *     *

The Government has failed to demonstrate the adequacy of its searches conducted in

response to Requesters' FOIA requests.  Accordingly, the Court should deny the Government's

Motion for Summary Judgment.  If the Court does not deny summary judgment at this stage,

discovery will be necessary to permit Plaintiff to develop facts essential to oppose the

Government's Motion for Summary Judgment on the grounds that its searches were inadequate.

Respectfully Submitted,

*/s/ Lauren G. Brunswick*
Robert C. Kirsch (BBO #541755)
Lynne C. Soutter (BBO #657934)
Lauren G. Brunswick (BBO #660996)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000

DATED:   August 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent out
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants.

*/s/ Lauren G. Brunswick*
Lauren G. Brunswick

DATED: August 27, 2008