UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10735-RGS

STEPHEN H. OLESKEY,
on behalf of Guantanamo internees
LAKHDAR BOUMEDIENE, MOHAMED NECHLA, MUSTAFA AIT IDIR,
SABER LAHMAR, HADJ BOUDELLA, and BELKACEM BENSAYAH

v.

UNITED STATES DEPARTMENT OF DEFENSE and
UNITED STATES DEPARTMENT OF JUSTICE

MEMORANDUM AND FINAL ORDER
ON PLAINTIFF'S FREEDOM OF INFORMATION ACT REQUEST

October 24, 2013

STEARNS, D.J.

The court would not want the brevity of this memorandum to be taken as a reflection of the investment of court time this matter has required. It is simply necessary to write with some delicacy when the documents involved – even in an age in which government seems unable to protect even its most closely guarded secrets – fall under a claim of state privilege. The facts of this much-litigated case have been chronicled here and elsewhere, and do not bear further repetition. The only noteworthy change in the posture of the case is that only one (Belkacem Bensayeh) of the original six Guantanamo detainees on whose behalf this Freedom of Information Act (FOIA) case was brought (by nominal plaintiff Stephen Oleskey) has not been released and repatriated. (Bensayeh was recommended for transfer by the Guantanamo Review Task Force in January of 2010, but it would appear that no country has been willing

to accept him).

This court has previously ruled that the search conducted by the Department of Defense in response to plaintiff Oleskey's FOIA request was done with "virtually unprecedented" thoroughness. *See Oleskey ex rel. Boumediene v. U.S. Dep't of Defense*, 658 F. Supp. 2d 288, 298 (D. Mass. 2009). Subsequent to that ruling (and prior to the government's filing of a *Vaughn* index, plaintiff filed a motion for *in camera* review of three "key" documents (or classes of documents). These were a chain of allegedly exculpatory e-mails, a Power Point presentation involving some or all of the six detainees, and a videotape of a forced cell extraction of one of the detainees (not Bensayeh). The videotape the government has previously reported as irretrievably lost. *See Id.* at 298 n.23.[1]

Mindful of the admonition that *in camera* inspection of documents for which a claim of state secrecy is made is not to be undertaken lightly, *see In re Sealed Case*, 494 F.3d 139, 144 (D.C. Cir. 2007), but given the sensitivities of the issues involved, the court allowed plaintiff's motion. After *in camera* review of the chain e-mails and the Power Point presentation, the court requested additional information from the government about the possible segregability of elements of the documents. After receiving the government's response (and

[1] In footnote 9 of his latest response, plaintiff describes the loss of the videotape by the government as "suspicious" and deserving "additional scrutiny by the Court now," although no suggestion is offered as to what form that additional scrutiny might take.

plaintiff's comments), the court reviewed the documents *in camera* a second time. Based on this review, the court concluded that the Power Point presentation could not be usefully severed. *See* Order of September 25, 2012, Dkt #118. Responding to plaintiff's further concerns, the court conducted a third *in camera* review of the disputed e-mails. Based on this review and the government's responses to the court's request for additional explanation, the court determined that the e-mails had been properly withheld under FOIA Exemption 7. See Order of January 9, 2013, Dkt #127.

Seeking to bring the litigation to a close, the court entered an Order on February 6, 2013, Dkt #129, stating its belief that the material disputes about all of the documents that figured in plaintiff's original request had now been resolved. Nonetheless, as a precaution, the court invited plaintiff to identify with "some specificity" any disputed document that it might have overlooked. *Id.* at 2. In responding to the court's invitation, plaintiff returns foremost to the subject of the e-mail chain, complaining that the government has not produced the emails "in any form." In making this statement, the court faults plaintiff for not being altogether candid. Page 3 of plaintiff's response, when read carefully in conjunction with footnote 2, is a tacit admission that the e-mails were in fact produced by the government in the habeas proceedings before Judge Leon in the District of Columbia. (Plaintiff in the body of the footnote purports to quote directly from one of the e-mails.) The actual complaint therefore appears not to be the lack of production, but the fact that the e-mails were produced under a

protective order entered by Judge Leon (which still remains in effect.) What plaintiff is asking the court to do is not to order the government to do something that it has not done, but to do it again in a manner that will effectively overrule Judge Leon's order, something that this court has neither the power nor the inclination to do.

The second element of plaintiff's response is the assertion that "numerous" documents have been improperly withheld or redacted under FOIA Exemptions 5, 6, 7(A), and 7(C). Plaintiff then gives the court three Tables setting out over one hundred undifferentiated entries identified only by Bates ranges totaling one or two thousand pages. (On a cursory examination of the three Tables, some of the Bates numbers appear to reference the same document, although this is not stated anywhere in the request). These invitations to a ferreting expedition fall woefully short of the court's direction that plaintiff designate any remaining disputed documents with some reasonable degree of specificity. The court has neither the time nor the inclination to undertake a document review to ascertain precisely what it is that plaintiff has in mind.

ORDER

As the court has previously determined that the disputed e-mail chain and Power Point presentation were properly withheld by the government, and because in all other respects plaintiff has failed to comply with the court's order of February 6, 2013, the court will ORDER only that the government produce a *Vaughn* index of the redacted disciplinary records identified on page 5 of the

parties' joint statement of July 28, 2011 (Dkt #107) or in lieu of a *Vaughn* index, unredacted versions of the reports (except as to personnel identities). This will be done within thirty (30) days of the date of this Order. Plaintiff will then have twenty-one (21) days to file any objections. Unless the court orders otherwise, the Clerk will then permanently close the case.

SO ORDERED.

/s/ Richard G. Stearns
_______________________________
UNITED STATES DISTRICT JUDGE